# Reed *v.* Pittsburgh, Cincinnati, Chicago, and St. Louis Railway Co., Appellant.

*Negligence—Railroads—Bridge accident—Disregard of "Slow" order—Contributory negligence—Implied invitee—Duty of reasonable care—Case for jury.*

1. In an action against a railroad company to recover damages

for personal injuries, the question of defendant's negligence is for the jury where there is evidence that at the time of the accident the plaintiff was employed by a construction company engaged in building a concrete bridge for defendant company; that plaintiff was required to see that cement flowed freely through a chute to forms below the trestle bridge, over which defendant's trains were running; that while plaintiff could have inspected the chute from below, it was necessary for him to stand on the trestle in order to do the work effectively; that the use of the trestle by the plaintiff and other employees of the construction company had been customary with the knowledge and in the presence of the inspectors and master carpenter of the defendant company; that during the construction of the bridge defendant company issued a "slow" order requiring trains to run at the rate of four miles per hour, and the employees of the construction company understood that such order was for their protection, and which was disobeyed in consequence of which plaintiff, while standing on the trestle, was struck by a train running at a speed of from fifteen to twenty miles an hour, and suffered the injuries complained of.

2. In such case where it appeared that plaintiff was employed to do and was doing at the time of the accident a part of the work required of his employers in the execution of their contract with the defendant company, and that while he might have performed that service in another indirect and less effective way by going beneath the trestle, the work could be more advantageously done by standing on the trestle, there was evidence of an implied invitation on the part of the defendant for the plaintiff to use the bridge for such purpose; that he was neither a licensee nor a trespasser, and that the defendant owed him the duty of reasonable care under the circumstances, and the court made no error in leaving the question of plaintiff's contributory negligence to the jury, and a verdict and judgment for plaintiff was sustained.

Argued Nov. 5, 1913.  Appeal, No. 201, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., Second T., 1911, No. 528, on verdict for plaintiff in case of Walter Reed v. Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company.  Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Trespass to recover damages for personal injuries. Before BROWN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff of $3,500, and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellant.

*John J. Heard,* with him *George E. Shaw,* of *Reed, Smith, Shaw & Beale,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1914:

There was evidence to warrant the jury in finding sufficient facts to support the verdict for the plaintiff and the case was, therefore, for the jury. The accident occurred and the plaintiff lost his leg by reason of the disobedience of the "slow" order by the trainmen operating the train which struck the plaintiff, and their failure to give the proper signals of the approach of the train to the trestle or bridge. A concrete bridge was being built by the plaintiff's employer, the McKelvy-Hine Company, for the defendant railway company. He was, therefore, indirectly working for the defendant in the construction of the bridge. He had charge of the mixer and one of his duties required him to see that the cement did not clog, and that it flowed freely through the chute to the forms which were directly below the trestle or steel bridge. It is true he could have inspected the chute by going beneath the trestle, but if the material clogged in the chute and the mixer had to be stopped he would have had to communicate with the man operating it through two or three other men instead of giving the signal direct. The customary and habitual way of performing this duty was to go on the trestle about fifty or sixty feet east of the mixer from which point he could observe the flow of the concrete

through the chute and in case of the material clogging he could communicate directly with the man in charge of the mixer and stop the machine. It was not, therefore, only reasonably necessary but quite necessary that the service be performed in this way if it was to be done effectively by the plaintiff himself and not indirectly through others. The fact that it was done in this way for such length of time without any known objection on the part of his employer or the defendant company would indicate that the plaintiff was performing his duties in the proper way by going on the trestle to inspect the chute.

There can be no question under the evidence that the employees of the construction company, engaged in erecting the concrete bridge, used the trestle from the time the work was begun in May until the accident happened on the thirtieth of July following. This was done without any protest or objection by the defendant company. In addition to the use made of it by Reed, the plaintiff, in inspecting the chute, he and the other employees used it for many purposes, such as to repair the chute, to cross to the company store for anything they wanted, and in carrying material and tools from one side of the creek to the other. They also laid a pipe line on the trestle to carry steam across the bridge to operate a pump which was pumping water from the excavations on the other side of the creek. The men would cross in gangs of a dozen or fifteen at a time, and the testimony is that the trestle was used by them daily and almost hourly until the accident occurred. This use of the bridge was made in the presence of and with the knowledge of the defendant's inspectors of the trestle and of the concrete work, both of whom were in daily attendance upon their duties, and also with the knowledge of the defendant's master carpenter, in charge, who visited the work at frequent intervals.

The evidence was sufficient, we think, to warrant the jury in finding that the McKelvy-Hine Company's em-

ployees used the trestle with the acquiescence and knowledge of the defendant company during the construction of the concrete bridge, and that it was necessary for Reed to use the trestle in order to perform his duties effectively. The work that Reed was employed to do and was doing at the time of the accident was a part of the work required of his employers in the execution of their contract with the defendant company. While, as suggested above, he might have performed that service in another indirect and less effective way by going beneath the trestle, it is clear that the work could be more advantageously done by going on the bridge to perform the service. It follows, therefore, that there was an implied invitation on the part of the defendant for Reed to use the bridge for the purpose, and that he was neither a licensee nor a trespasser. The defendant owed Reed the duty of reasonable care under the circumstances and the failure to perform that duty by its employees was negligence for which the defendant was liable. Whether the "slow" order was made solely by the defendant company to insure the safety of its trains and passengers, as claimed by it, or whether it was made for the convenience as well as the protection of the employees of the McKelvy-Hine Company engaged in the erection of the concrete bridge was a question of fact for the jury, which on sufficient evidence, they found in favor of the plaintiff. There was direct evidence that the trestle was not weakened, as alleged by the defendant, in excavating for the foundations of the concrete bridge, and if that be true it was not a ground for requiring a slower schedule for the trains using the trestle. There was also evidence tending to show that all the employees of the construction company, including Reed, using the trestle, understood that the "slow" order was for their protection, and that they relied on it for that purpose. It is not denied that after the promulgation of the order all the trains were operated in accordance with it until the train which injured the

plaintiff was crossing the trestle. It was running at the rate of from fifteen to twenty miles an hour. The "slow" order required trains to run at the rate of four miles an hour, and it is clear from the evidence that if the train had been running as required by that order, the plaintiff could have left the bridge in time to prevent the collision which resulted in his injuries.

The question of the plaintiff's negligence was for the jury. If he was properly on the bridge in discharge of his duties and was justified in believing that the "slow" order would be observed by trains passing over the trestle, there was no evidence in the case which would convict him of any negligent conduct. He was not exposing himself to an open and obvious danger while he was on the bridge, but was perfectly safe so long as the defendant's employees observed the company's rules in the operation of the trains. His risk or danger did not come from any act of his, but from an unanticipated negligent act on the part of the company's employees in failing to run the train according to the "slow" order and in not giving proper signals of the approach of the train. It is true, as suggested by appellant's counsel, that the plaintiff knew that the defendant company was using the bridge regularly for its scheduled trains and for its picnic trains, but the evidence does not show that he knew or ought to have known that the company was running any of its trains in disobedience to the "slow" order which required them to run at a rate not exceeding four miles an hour as they crossed the trestle. He, therefore, had a right to assume that the defendant would operate its trains in accordance with the special order while they were crossing the trestle. It was the disregard of this order and the failure to give the proper signals by the crew operating the train which struck the plaintiff and not his own negligence, that caused his injuries.

The judgment is affirmed.