Sorrentino *v.* Graziano et al. (Wilson, Appellant).

Argued October 4, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*George H. Detweiler,* for appellant.

No appearance was made nor brief filed for appellee.

OPINION BY STADTFELD, J., December 18, 1940:

On May 17, 1940, appellant was a witness before OLIVER, P. J., of Philadelphia Court of Common Pleas No. 7. He testified that he had been sent to investigate the accident forming the basis of the suit in which he was testifying, that he called at the home of the plain-

tiff to learn whether plaintiff had done any work since the accident, and that he got the information from the plaintiff while on that visit, which was made November 9, 1939. Asked whether he had told plaintiff why he called on him, he replied that he did not, and that he used a pretext for calling. He testified that he did not te'l the plaintiff why he called at the home of the latter, because then he would not have gotten the information he was after. The trial judge and the attorney for plaintiff continued to ask why he had gone to plaintiff's home, and the trial judge said that the witness only had to say, "No, I didnt tell him, because I was an investigator, and if I told him I wouldn't have gotten the information." The witness had already used the very words, "I wouldn't have gotten the information I was after."

After the jury retired, the trial judge entered a rule on the witness to show cause why he should not be held in contempt of court "for your failure to answer the questions which were asked by counsel for the plaintiff and your failure to answer the questions which were asked by the Court." At the conclusion of the summary hearing then and there held, the judge ruled, "I will adjudge you guilty of contempt of court, and I impose a fine of $25. How long do you want in which to pay it?"

From that action, this appeal has been taken by the witness, who is the appellant herein.

For a proper understanding of this appeal, it is necessary to quote a part of the testimony of appellant in the trial of the case out of which the present controversy arises.

Appellant called as a witness on behalf of defendants had testified: "Cross-examination. By Mr. Meyer: Q. What is your business, Mr. Wilson? A. I am an investigator. Q. And what was the purpose of your call at this man's home? A. To learn if he had been able

to do any work since his accident. Q. And when he came downstairs, as you testified, what did you say to him and what did he say to you? A. Well, when he came down the stairs, I said to him, I understand you are a painter. He said, yes. He went this way (indicating), he pointed to his clothes and they were full of paint, that he was a painter. I said, what are your qualifications as a painter? Oh, he said, I have done a lot of work throughout the city. Well, I said, name some of the places. He said, well, I worked out at 6142 Christian Street. I said, is that the only place? He said some other places. I said, who do you get your work from? He said, Mr. Rosenberg, a real estate man out in West Philadelphia. I said, how long have you lived here? He said, oh, I have been here about a month with my mother. I formerly lived—at the time I didn't catch it. It was either 1635 or 1625 Annin Street. He said, I painted some houses out there. He said, if you get out in that neighborhood, you can see for yourself right in that same block. He mentioned, I think it was the side he lived on, and the other side. By the Court: Q. Do you see Mr. Rosenberg here in court? A. I don't know Mr. Rosenberg. Q. You mentioned Mr. Rosenberg. Did you go out to see him? A. No, sir. Q. You did not go out to confirm it by talking with Mr. Rosenberg? A. I did not. By Mr. Meyer: Q. Then what else did he say and what did you say to him? A. He told me—I asked him for a card. He said, I don't have any cards printed; I am getting some printed, but I will give you my name on a piece of paper or cardboard, he said, whatever I have. Q. What else? A. In regard to what? Q. What else did you say and what else did he say to you? A. In reference to what? Q. Anything. Give me the rest of the conversation. A. You mean you want me to repeat what I have already said? Q. No. No. Is there anything else what you haven't said? A. Well, if you ask me

a question, then it will refresh my memory as to what you are referring to. Q. Now, Mr. Wilson, I wasn't there. You and he were there. I am trying to find out what you talked about. Is there anything else that you talked about, that he said to you or you said to him? A. There is nothing I can think of just now. If you ask me—Q. That is all there was. So that at no time did you tell him what you were there for? A. Any more than I asked him if he was a painter, and he said yes. Q. Did you tell him at any time during your conversation what you were there for? A. I told him if he were a painter, I might be able to get him some work. By the Court: Q. You know what the lawyer is asking you. You answer yes or no to that question. Did you tell him what you were there for? A. What I just said. Q. Did you or didn't you? A. Yes. Q. All right. Now, go ahead and tell us what you told him. A. I told him if he were a painter I probably would be able to get some work for him. Q. Was that the reason you went there, to employ him as a painter? A. That was my reason to go there, as a pretext for— Q. What job did you have to give him, if he were a painter? A. I had no work to give him, but I did want him to tell me what work he had been doing. Q. I know, but counsel wants to know whether you told him why, whether you told him what your real purpose was when you saw him? A. That I might be able to get him some work if he were a painter. Q. And you went there intending to get work for him, did you? A. No, I went there to learn if he had been doing some work. By Mr. Meyer: Q. So that that was only a pretext? A. As I said, it was a pretext. Q. you didn't tell him then, your real purpose, did you? Answer yes or no. Did you tell him your real purpose? A. I don't understand the question. Q. Did you tell him it was a pretext? A. I did not, or I wouldn't have gotten the information I was after. By the Court:

Q. That is right. It was perfectly legitimate for you to go there under that pretext, but what the lawyer wants is a direct answer from you. A. I thought I had explained that. Mr. Troutman: I think the witness does not understand, your Honor. The Court: I think the witness does understand. Mr. Meyer: He knows very well what we are talking about. The Court: The witness is an experienced man, and he must understand that. Mr. Troutman: He is an investigator. By Mr. Meyer: Q. How long have you been an investigator? A. I have been an investigator about twenty-five years. Q. Well, this isn't the first man you ever went to, under a pretext, is it? A. No, it is not. Q. And you went there to get information from him, not to give him a job, didn't you? A. I went there to learn whether he had been working since the accident, which I learned. Q. And did you tell him that that was the purpose that you were there for? A. I did not tell him that was the purpose. Q. You did not. But you lied to him and told him that you might have some work for him, that you might be able to get him a job—Mr. Troutman: I object to that. A. No, I did not lie to him. The Court: The witness has admitted he had no work; it was a lie. Mr. Troutman: But he is an investigator, if your Honor please. The Court: That is all right The chief thing is this. It goes to his credibility, because this man only had to say, 'No, I didn't tell him, because I was an investigator, and if I told him I wouldn't have gotten the information.' If this witness is unwilling to state that, has been unwilling to state that to the lawyer—The witness: I did so say it. The Court: Oh, no, the jury will consider how much effort it took to get that from you. This witness had the right to go there as an investigator, but counsel is testing this man's credibility as a witness. Mr. Troutman: Will your Honor allow me an exception to your remarks there? I feel it is unjustified in this case. The

Court: I do not, frankly. Both counsel and I had to work very hard to get an answer from this witness. Very hard. By Mr. Meyer: Q. Now, when he walked downstairs, or when he ran downstairs and walked up to you, would you say he walked normally, the same as you and I walked? A. No, there was a slight limp. Q. There was a slight limp? A. Yes. Q. On which foot? A. Well, he came so quickly,—it was only in the few steps as he approached me. I really don't know which leg it was. Q. And did he stand up all the time he was talking to you? A. I was standing, and he stood for about three or four minutes. Then his mother said something to him, and then he requested me to sit down. Q. And then did he walk out to the door with you? A. Yes. Q. And how did he walk then? A. He walked with a slight limp. Q. On which foot? A. That, I don't know. Q. Do you have your notes there with you? A. Yes. (the witness handed a notebook to Mr. Meyer). Q. Is this whole book on this case? A. No. Q. I just want this case. I am not interested in any other case you investigated. (The witness pointed out certain pages in the notebook). By Mr. Meyer: Q. There is nothing in here about how he walked, is there? A. I remember that. Q. Do you want to look it over again? A. I remember how he walked. Q. You remember how he walked? By the Court: Q. That is not an answer. I will caution you that when you are asked a question, you must answer it directly. I will not caution you again. The stenographer will read the question. (The stenographer read the question: There is nothing in here about how he walked, is there?) A. No, because I remember how he walked. By Mr. Meyer: Q. There is nothing in here about him running down the steps, is there? A. No, because I remember how he came down. By the Court: Q. Is there any thing in there that you do not remember? Is there anything that you wrote down

that you do not remember? A. That is a pretty broad question. Q. With reference to this case? In other words, I am trying to find out why you trusted to your memory as to some things and why you did not as to others. Look at your report and let us know. A. Is there something you asked me that I had forgotten? A. Look at your report, please. Mr. Troutman: Your Honor, I think you are prejudicing my case, and I move for the withdrawal of a juror. The Court: Well, counsel, this is a very recalcitrant witness, and he is being recalcitrant for no purpose at all. It was legitimate for him to go there as investigator and to keep his purpose secret, but he is required to answer when he comes into a court. Mr. Troutman: I have no doubt about that, but your Honor, in your attitude to this man—he has made certain notes here—The Court: This man frankly has exasperated me by his reluctance to answer the questions. Mr. Troutman: Well, that may be, but if your Honor please, I feel my case is prejudiced and I renew my motion. The Court: The jury will disregard my prejudice. After all, I am only a human being and I expect a witness to answer questions when he is on the stand. Do not let it prejudice the defendant's case. By Mr. Meyer: Q. When you finished that investigation that day, did you write up a report of it? Mr. Meyer: Will the stenographer note that the witness is not answering my question, but rather referring to his notes again? The witness: I was requested by the Court to look over my notes. By the Court: Q. No, your duty now is to answer the question that counsel has asked you. A. I haven't looked over my notes yet. The Court: Counsel, will you instruct your witness to please answer questions? Mr. Troutman: I don't know whether he understands. By Mr. Troutman: Q. While you were reading your notes, Mr. Meyer asked you a question. Mr. Troutman: Will the stenographer repeat the question? (The stenographer read

the question: When you finished that investigation that day, did you write up a report of it?) A. Yes."

At the conclusion of the trial, immediately after the jury had retired and before they returned their verdict, the record shows, inter alia, the following: "The Court: Will Charles Wilson come to the bar of the court? (Charles Wilson came to the bar of the court). The Court: Mr. Wilson, I enter a rule on you, returnable forthwith, to show cause why you should not be held in contempt of court for your failure to answer the questions which were asked by counsel for the plaintiff and your failure to answer the questions which were asked by the Court. It took us, on one occasion, twelve questions to get a simple answer from you, and in the meantime you testified exactly opposite to what your final answer was, so that, of course, the first time you testified you were not answering truthfully. Furthermore, even after that exhibition of wilful obstinacy, I had to caution you further on in the examination when you proceeded to do exactly the same thing, and failed to answer questions that were asked you. I will give you an opportunity to make whatever explanation you want to make. You are an experienced man, you are an investigator, are you not? Mr. Wilson: I am. The Court: How many years have you been an investigator? Mr. Wilson: I have been an investigator for about twenty-five years. The Court: You have been in court many times, have you not? Mr. Wilson: I have. The Court: And you know the rule which requires a direct answer to a direct question, do you not? Mr. Wilson: Where I understand the answer, I have always made it. The Court: Again, you are not answering my question. Mr. Wilson: No,—you asked me if I knew the rule. Yes, I should answer. Where I understand, I try to ......"

From the examination of the record, it plainly appears that the trial judge largely superseded counsel.

The witness had substantially answered the question which the court submitted, in almost the language which the court desired to elicit. No one who heard the testimony of this witness could have failed to understand that he called on plaintiff as an investigator. He admitted that he had not told plaintiff that he was an investigator because if he had told him he would not have gotten the information he sought.

The witness was told by the judge to refer to his notes so as to inform the court why he (the witness) trusted to his memory as to some things and why not as to others. While looking at his notes, pursuant to this direction, counsel for plaintiff interjected a question to the witness to which the latter replied that he was requested by the court to look over the notes, whereupon the court again interposed the statement, "No, your duty now is to answer the question that counsel has asked you." The witness in avoiding Scylla encountered Charybdis.

For a comprehensive discussion of the cases on contempt, see the review by Judge KELLER, now President Judge, in re *Adjudication of Contempt of Myers and Brei*, 83 Pa. Superior Ct. 383, from which we quote, at p. 387: "Courts undoubtedly have the power to punish contempts and necessarily must have it to protect themselves from insult and enforce obedience to their process: *Passmore Williamsons Case*, supra, p. 18; and as a general rule,—as in cases where the contempt arises from some misconduct committed in the presence of the court, or refusal to obey its lawful process, order or decree—, the appellate court will not inquire further than to ascertain whether the record shows such misconduct or disobedience of the court's order, and its judgment on the facts is generally conclusive: *Com. v. Newton*, supra. But, as was well said in *People v. Kelly*, 24 N. Y. 74, 'this rule is, of course, subject to the qualification that the conduct charged as consti-

tuting the contempt must be such that some degree of delinquent or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so ......''

After a careful examination of the record, a majority of the court are of the opinion that the court was not warranted in adjudging appellant in contempt.

The assignments of error are sustained, the judgment is reversed and appellant is discharged.