Sorrentino *v.* Graziano et al., Appellants.

Argued December 3, 1940.  Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Glenn A. Troutman,* of *McWilliams, Wagoner & Troutman,* with him *Harry Goodfriend,* for appellants.

*Milford J. Meyer,* with him *Michael Marchesano* and *Robert M. Bernstein,* for appellee.

OPINION BY MR. JUSTICE DREW, January 6, 1941:

Peter Sorrentino, an employee of an independent contractor, obtained a verdict of $12,000 in this action in trespass to recover damages for personal injuries sustained by him while employed upon the building owned by defendants, Anthony Graziano and Joseph Maggio, and in which they, as partners, conducted a laundry business, known as King Damp Wash Laundry. Upon the filing of a remittitur, reducing the verdict to $8,500, motions for judgment n. o. v. and a new trial were dismissed. Defendants have appealed.

In determining the question as to whether judgment n. o. v. should be entered, plaintiff, of course, is entitled to have the oral evidence supporting the verdict considered and all the rest rejected: *Kulka v. Nemirovsky,* 314 Pa. 134, 139. Thus, it is found that defendants entered into an oral contract, in which nothing was stated as to furnishing of equipment, with Charles Dangler and his co-partner, Homer Argenbright, as independent contractors, for the painting of a guyed steel smokestack of a diameter of four feet and extending a height of approximately forty feet above defendants' laundry building.

Attached to the stack was a steel wire cable, known as a gantline, approximately three-eighths of an inch in thickness. This cable ran to a pulley at the top of the stack and down again to the roof of the building, and was erected, as is the custom, for the use of workmen in painting and repairing the stack.

On Saturday morning, August 6, 1938, the time previously agreed upon for doing the painting since the laundry would not then be in operation, Dangler and his co-partner went upon the roof to begin the work for which they had contracted, when Argenbright, who was to do the actual painting, became ill and left the building. He returned shortly thereafter with plaintiff, a painter, with whom Dangler was not then acquainted. Dangler questioned plaintiff as to his experience as a steeplejack, and, when assured of his qualifications, plaintiff was employed by him. At the trial, however, plaintiff admitted that he had lied regarding his experience, but stated that he had done so merely because of his urgent need of employment.

After Dangler and Argenbright had examined the gantline and tested its strength by pulling upon both of its ends, they proceeded to hoist plaintiff (in the customary and usual manner adopted by steeplejacks and as safe as any other method that could be used) in their boatswain's chair, which they had attached to the gantline, to the top of the smokestack where he was to attach their rigging. When plaintiff was about half way to the top, the gantline broke and plaintiff was thrown to the roof of defendants' building, sustaining injuries to his feet and back.

When the stack from which plaintiff fell was erected in 1936 to replace another which had been blown down by a storm, the gantline attached to the old stack was removed therefrom and installed upon the new one, at defendants' direction, even though the contractor then doing the work had advised them that this cable was in a defective condition and should be replaced. With this

knowledge, defendants did not inform plaintiff nor his employers, Dangler and Argenbright.

It is perfectly clear from a reading of the foregoing facts that the learned court below properly refused defendants' motion for judgment n. o. v. The work being performed by plaintiff at the time of the accident was for the mutual benefit of all parties, and plaintiff, therefore, was lawfully upon the premises by the implied invitation of defendants, who were in duty bound to use reasonable care for his safety: *Nettis v. General Tire Co. of Phila., Inc.*, 317 Pa. 204, 209-210; *Craig v. Riter Conley Mfg. Co.*, 272 Pa. 219, 221. Plaintiff was entitled to receive warning by defendants of their failure to maintain the gantline in a reasonably safe condition: *Vetter v. Great A. & P. Tea Co.*, 322 Pa. 449, 454; *Kulka v. Nemirovsky*, supra, 139. Furthermore, under the circumstances of the instant case there was no reason to expect the workmen to discover the defect in the cable, which condition was known to the defendants, and was neither known nor was it such as could be discovered by plaintiff or his employers. Therefore, it was the duty of the defendants to have warned them: *Douglass v. Peck & Lines Co.*, 89 Conn. 622, 629. See also Restatement, Torts, section 343 (Comment d).

Furthermore, while it is true, as the record reveals, that the independent contractors' rigging may have been fastened to the top of defendants' smokestack by several methods, yet plaintiff's testimony clearly establishes the fact that the raising of a workman by means of the gantline is the method ordinarily and customarily adopted by those engaged in stack painting and is as safe as any other known manner. Therefore, there was an implied invitation on the part of defendants for plaintiff to use this cable for that purpose and defendants were negligent in failing to maintain it in safe condition. See *Reed v. Pitts., C., C. & St. L. Ry. Co.*, 243 Pa. 562, 566. In *Ferris v. Aldrich*, 12 N. Y. S. 482, where an employee of an independent contractor was using, as a

freight elevator, one of several incompleted ones in the building, while another, which had been finished for the purpose, was stopped for repairs, it was said (p. 483): "He was the employe of a contractor who was working upon the building, and may be said therefore to have come to the building on the invitation of the defendant. . . . There is no evidence that he knew anything of the alleged prohibition of the employes from riding in the elevator, and it was but natural that he should use the same for the purpose of conveying up and down the heavy material, a duty with which he was charged by his employers."

Defendants further contend that they are not liable for the injuries suffered by plaintiff since they did not know that a gantline is employed to hoist men to the top of a stack, and further that they had not given the employers of plaintiff permission to use the gantline in that manner. We find no merit in such argument, for, as was properly said by the learned court below: "From the testimony of the defendant Graziano, a jury might reasonably and properly infer that he knew that other painters had used the gantline to ascend the stack. . . ." Moreover, by maintaining the cable upon the stack contracted to be painted, defendants were bound, as reasonable and prudent individuals, to know the customary uses to which the gantline would be put. See *MacDougall v. Penna. Power & Light Co.*, 311 Pa. 387, 392; Restatement, Torts, section 290. *Connolly v. Union League of Phila.*, 221 Pa. 21, and *Hotchkin v. Erdrich*, 214 Pa. 460, upon which defendants rely, are readily distinguishable, since in the instant case defendants had actual knowledge of the defective condition of the cable and did not reveal that fact to plaintiff or his employers.

However, a new trial must be granted on account of the prejudicial remarks made by the trial judge, as well as his severe interrogation of one of defendants' witnesses. During a somewhat prolonged cross-examination in which the witness admitted several times that he

had gone to the home of plaintiff on the pretext that he, the witness, might be able to secure some work for plaintiff, the trial judge, becoming highly incensed when the witness stated that he had not lied to plaintiff, entered into the following argument with counsel for defendant: "The Court: The witness had admitted he had no work; it was a lie. Mr. Troutman [counsel for defendants]: But he is an investigator, if your Honor please. The Court: That is all right. The chief thing is this. It goes to his credibility, because this man only had to say, 'No, I didn't tell him, because I was an investigator, and if I told him I wouldn't have gotten the information.' If this witness is unwilling to state that, has been unwilling to state that to the lawyer—The witness: I did so say it. The Court: Oh, no, the jury will consider how much effort it took to get that from you. This witness had the right to go there as an investigator, but counsel is testing this man's credibility as a witness. Mr. Troutman: Will your Honor allow me an exception to your remarks there? I feel it is unjustified in this case. The Court: I do not, frankly. Both counsel and I had to work very hard to get an answer from this witness. Very hard." And, again, when the witness was being cross-examined as to the notes made by him in regard to his visit to plaintiff's residence, the court interrupted, as follows: "Q. Is there anything in there that you do not remember? Is there anything that you wrote down that you do not remember? A. That is a pretty broad question. Q. With reference to this case? In other words, I am trying to find out why you trusted to your memory as to some things and why you did not as to others. Look at your report and let us know. A. Is there something you asked me that I had forgotten? Q. Look at your report, please. Mr. Troutman: Your Honor, I think you are prejudicing my case, and I move for the withdrawal of a juror. The Court: Well, counsel, this is a very recalcitrant witness, and he is being recalcitrant for no purpose at all. It was legitimate for him

to go there as an investigator, and to keep his purpose secret, but he is required to answer when he comes into court. Mr. Troutman: I have no doubt about that, but your Honor, in your attitude toward this man—he has made certain notes here—The Court: This man frankly has exasperated me by his reluctance to answer the questions. Mr. Troutman: Well, that may be, but if your Honor please, I feel my case is prejudiced and I renew my motion. (Motion denied and exception noted for defendants.) The Court: The jury will disregard my prejudice. After all, I am only a human being and I expect a witness to answer questions when he is on the stand. Do not let it prejudice the defendant's case." In this connection, it was said, in *Commonwealth v. Myma*, 278 Pa. 505, 508: "Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other,

without explaining to the jury that all these matters are for them." The request to the jury to prevent prejudice of defendants' case was not enough; the court was bound to so act as to prevent prejudice, and this it admittedly did not do. See *Sorrentino v. Graziano*, 144 Pa. Superior Ct. 107.

We consider discussion of the numerous other complaints concerning instructions by the trial judge unnecessary. The judgment of the court below should be reversed because of the remarks of the trial judge and a new trial granted.

The judgment is reversed with a venire facias de novo.

Mr. Justice STERN dissents from the granting of a new trial.