## Miller v. Hickey

*Donald E. Hogeland* and *Maurice A. Hogeland*, for plaintiff.

*Ralph S. Croskey*, for defendant.

CARROLL, J., July 11, 1950.—This matter comes before the court on motions for a new trial and for judgment n. o. v.

The action was in trespass. Plaintiff, a foreman painter, was employed by S. W. Kooperman & Company, an independent painting contractor, to paint the exterior of 1901-05 Locust Street, in the City of Philadelphia. These premises had been converted from a private home into an apartment building. On October 15, 1946, plaintiff, while working on the premises, fell when the railing of a fire escape on the Locust Street side gave way, throwing him to the street. The injuries which resulted are the basis for the damages sought in this action.

The evidence disclosed that plaintiff went to defendant's property for the first time the day before the accident. At that time, he and three other painters painted the exterior of the windows on the Nineteenth Street side. The following day, plaintiff started to scrape the fire escape on the Locust Street side, preparatory to painting. After an hour and a half, while on the fire escape, he turned around to go down to get some paint. In so doing he placed his left hand on the

outside rail of the fire escape and it gave way. In an effort to save himself, he tried to hold on with his right hand, but fell to the sidewalk, making a nearly complete somersault and landing on his right hip. The rail, which had given way, extended a distance of four or five feet along the fire escape, then connected with another rail about four feet in length, which in turn was fastened to the building. This rail was an ungalvanized steel pipe, about two and a half inches in diameter.

Plaintiff testified that he did not lose consciousness from the fall and, from a sitting position on the sidewalk, he could see an upright of the fire escape that had become detached. On examining it he found it to be corroded and deteriorated at the bottom. Close to the upright was half of a wooden peg and several screws about two and a half inches long, the threads of which were gone. Plaintiff further testified that he had not been warned by anyone of the existence of any dangerous condition. A fellow worker, who had heard plaintiff cry out and saw him in the act of falling, testified that after plaintiff was removed there was a lot of debris, including pieces of pipe in the immediate vicinity, and that a whole section of the fire escape was gone. Parts of railing which were on the ground were corroded and almost rusted through. He testified that he pulled the inside rail from its fastening in the wall and that the wood to which it was fastened was so weather-beaten that the fastening screws had no hold but "just came right out." Another coworker did not see the accident, but saw plaintiff after he had landed on the ground. He accompanied plaintiff to the hospital. On returning, he saw the debris in the place where plaintiff had fallen and testified that the part of the fire escape attached to the ladder had sheared right off to the joint, showing corrosion of the material. He also testified that the outside rail was completely broken off.

Still another coworker testified he was on the ground pouring paint at the time of the accident, heard plaintiff cry out, looked up and saw one part of the outside railing of the counter-balance on the ground and another part, which had been screwed into the building, detached and out of position. He stated he examined the pieces on the ground and found them to be corroded.

The only evidence offered in behalf of defendant, owner of the building, was that of a maintenance inspector, employed by the real estate agent in charge of the property. He testified that he had inspected the building in June and September, prior to the accident, and that he had found nothing wrong, but that he had recommended the fire escape be scraped and painted. He stated he had walked down the fire escape looking for loose bolts and broken rails, had placed his hands on the guard rail at different places and found nothing loose, saw no evidence of pitting, but that there was some rust. This inspection, however, was simply with his eyes and hands alone. He did not scrape or test, and it was evident that the examination was merely routine and perfunctory and of a character which could not have disclosed the existence of any dangerous condition or defects.

Defendant's motions were based mainly upon two contentions; one, that there was no evidence of negligence, and secondly, there was no proof that plaintiff's employer had not been advised of the defective condition of the fire escape.

It is for the jury to decide the weight of the evidence in the light of the duty which defendant owed to those doing work for his benefit on his property. This duty consisted of an affirmative obligation to keep the premises in a reasonably safe condition or to warn those on the premises by his implied invitation of any dangerous condition which the defendant knew or should

have known to exist. See Sorrentino v. Graziano et al., 341 Pa. 113. The court considers there was ample testimony to support a finding by the jury of negligence by defendant for failing to perform this duty in view of the defective condition of the fire escapes.

The second contention of defendant was "that there was no proof of the negative fact that defendant did not notify plaintiff's employer of any defective condition". An obvious answer to this contention is that had defendant given any warning, he could have so testified affirmatively, since that fact lay peculiarly within his own knowledge. The averment by plaintiff in his complaint to the effect that defendant was negligent in "failing to warn plaintiff and others of the dangers of said fire escape", coupled with plaintiff's testimony that he was not warned of any dangerous condition, was sufficient to require defendant to affirmatively assert, as a matter of defense, that notice had been given, and to whom, if such were the case.

Ordinarily a plaintiff need not prove a negative, but may require the defendant to prove a fact because of superior means of knowledge. In Valles v. Peoples-Pittsburgh Trust Company, 339 Pa. 33, upon which counsel for the defense relies for the opposite position, this general rule is specifically stated. However, by the peculiar facts of that case there was testimony by the general contractor that he had examined the premises and taken into consideration in his estimate the condition which later caused the injuries. For that reason the court arrived at an exception to the general rule. There is no such evidence in the case at bar.

Defendant further complains that the verdict was excessive. The jury rendered a verdict for plaintiff in the amount of $20,000. On argument before the court en banc, this was reduced to $15,000, an amount which appears to this court to be amply supported by the testimony. The evidence showed plaintiff lost 49

weeks of employment, during which he would have earned $68 per week; that plaintiff was placed under necessary medical and other expenses amounting to $633.85; that the accident left plaintiff with a permanent disability and otherwise lessened his earning power, since he cannot do work from high places; further there can be no question of the extensive pain and suffering by plaintiff as a direct result of the accident. The reduced verdict of $15,000 appears to this court not to be excessive.

Motion for new trial and judgment n. o. v. dismissed.