## Wilkinsburg Real Estate & Trust Company *v.* Lewis, Appellant.

Argued April 15, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ. (DITHRICH, J., absent).

*John T. Conner,* with him *Samuel W. Pringle* and *Dalzell, Pringle, Bredin & Martin,* for appellants.

*William L. Jacob,* with him *William L. Jacob, Jr.,* for appellee.

OPINION BY ROSS, J., July 14, 1953:

The Wilkinsburg Real Estate and Trust Company instituted this action of assumpsit to recover the sum of $1,056 from Ben Lewis and Nat Hopper, individually and as partners doing business as Motor Sales Company. The money was alleged to be due plaintiff as its commission for procuring a tenant for premises owned by Lewis and Hopper as tenants in common. The case came on for trial in the County Court of Allegheny County before Judge BROWN and a jury. The trial judge granted a motion for compulsory nonsuit as to the partnership but submitted the case against the defendants as individuals to the jury, which returned a verdict for plaintiff. After defendants' motions for a new trial and for judgment n.o.v. were denied, and judgment entered on the verdict, they appealed to this Court, contending that the court below erred in refusing to grant their motions for judgment n.o.v.

The plaintiff, all conflicts having been resolved in its favor, is entitled to have the evidence supporting

its verdict considered and all the rest rejected. *Sorrentino v. Graziano,* 341 Pa. 113, 17 A. 2d 373; *Pinto v. Bell Fruit Co., Inc.,* 148 Pa. Superior Ct. 132, 24 A. 2d 768; *Valentine v. Phila. Transp. Co.,* 167 Pa. Superior Ct. 592, 76 A. 2d 471.

On February 17, 1950 the plaintiff received a telephone call from the defendant Lewis stating that the defendants wanted to lease or sell the property involved in this case. Pursuant thereto two employes of the plaintiff, Allen Dick and William Davis, went to defendants' place of business and talked with Lewis relative to securing a tenant for the property. The rental set by Lewis was $800 a month. At the trial Dick testified that the term originally discussed was "about 10 years" but that "What we proposed was a five year lease with a four year option". The defendant Lewis testified that the term discussed was "something along five years" and stated further that he told Dick he wanted a rental of $1,000 a month.

On or about March 15, 1950 plaintiff received a letter from Frank Reich, a Pittsburgh attorney, containing an offer by "United Electronics, Inc., a Pennsylvania corporation yet to be incorporated" to rent the defendants' building. The letter proposed a lease for a term of four years at a rental of $750 a month for the first two years and $800 a month for the remaining two years, with an option to continue said lease for an additional period of five years at a rental of $800 a month "plus any increase in County, School and Borough taxes". The letter set forth a number of terms proposed for inclusion in the lease. The defendant Lewis rejected the offer of United Electronics, Inc. *on the ground that the rent was not high enough.*

The plaintiff received a second letter from Reich wherein the offer of United Electronics, Inc. was for a term of four years at a rental of $800 a month, with

an option to continue the lease for an additional period of five years at a rental of $850 a month. The second letter also set forth certain terms and conditions which the proposed lessee wished incorporated in the lease. Dick and Davis took the letter containing the $800 offer and the check to the Motor Sales Company premises, where they met the defendant Lewis. Lewis, after reading the offer, said, "That is exactly what we want and we will take it . . . exactly what we have been looking for", and he accepted the check for the first month's rent. A day or so later the check was returned to plaintiff with a letter from Lewis in which he stated, inter alia: "The offer submitted by Mr. Reich is not acceptable and we wish to advise you that Mr. Nat Hopper and I, as owners of the premises at 213 Penn Avenue, are not interested in making any lease with the United Electronics, Inc., a Pennsylvania corporation yet to be incorporated."

The defendants admit that the defendant Lewis engaged the services of the plaintiff real estate company to find a tenant for the building. They contend, however, that "if Hopper is to be held liable, it must be on the basis that Lewis was his agent with authority from him to contract with plaintiff for plaintiff's services". There is no evidence of such agency, the defendants conclude, and therefore judgment n.o.v. should have been entered for the defendant Hopper. We disagree.

Paragraph Third of defendants' answer reads in part as follows: "It is admitted that the defendant, Ben Lewis, acting on his own behalf, and with the knowledge of the co-owner, Nat Hopper, discussed the matter of procuring a tenant with plaintiff's agent, and informally listed the property for rent at a rental of $1,000 per month, at which time plaintiff's agent agreed that plaintiff would list the property and make an ef-

fort to interest prospective tenants in leasing the same."[1] This admission was read into the record and, therefore, established Hopper's knowledge that Lewis was presuming to act for him in securing a tenant for the property through the efforts of the plaintiff. See *Mack v. Reading Company*, 173 Pa. Superior Ct. 296, 98 A. 2d 399.

Further, there is evidence that Hopper actually cooperated with plaintiff in its attempt to find a tenant for the building. On March 1, 1950 plaintiff's agent Dick brought representatives of the Bell Telephone Company to the defendants' building. At that time Dick told Hopper "who I was and where I was from" and Dick and Hopper conducted the Bell men through the premises. A floor plan of the building was requested by one of the representatives of the prospective tenant and Hopper apparently relayed the request to Lewis, who sent or delivered such plan to plaintiff.

Since the plaintiff is entitled by the jury's verdict to the most favorable inferences from the testimony (*Hunter v. Rossi*, 172 Pa. Superior Ct. 301, 93 A. 2d 912), it follows that Hopper knew that his co-tenant Lewis had engaged the services of the plaintiff to find a tenant for the joint property and that the plaintiff was making efforts to procure such tenant. Being aware of these facts, Hopper, if he did not wish plaintiff to represent him, had the duty to make that fact known to plaintiff. "Except for the execution of instruments under seal or for the performance of transactions required by statute to be authorized in a particular way, authority to do an act may be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on

---

[1] 88a.

the principal's account." *Restatement, Agency,* section 26. Comment *d* of the section reads in part: "Silence as manifestation. The manifestation of the principal may consist of his failure to object to unauthorized conduct. This is so where, in view of the relations between the principal and agent and all other circumstances, a reasonable person in the position of the principal knowing of unauthorized acts and not consenting to their continuance would do something to indicate his dissent. In such cases the agent may reasonably infer that the principal wishes him to continue so to act . . ." When one has knowledge that another is presuming to act for him and acquiesces therein, the relationship of principal and agent may arise; particularly where the parties are co-tenants in legal and actual possession of a property and the acts are in relation to that property.

Plaintiff does not claim to have found a tenant with whom the defendants entered into a written lease agreement but does contend that it earned a commission by producing a tenant *able and willing* to lease defendants' premises upon substantially the terms offered by defendants. The defendants, on the other hand, contend that plaintiff failed to produce a tenant "satisfactory to defendants who was ready and able to perform".

The defendants advance the technical argument that plaintiff did not produce a "tenant" at all for the reason that the proposed lessee was not in existence when the offer was made on its behalf by attorney Reich. It is to be recalled that Reich submitted two written offers to lease on behalf of the proposed corporation and upon each occasion specifically stated that the corporation was not yet in existence. The first offer was rejected by Lewis not because it was made on behalf of a corporation "yet to be incorporated" but rather because the rent was not high enough. The second offer was,

when first received by Lewis, acclaimed as "exactly what we have been looking for" and was later rejected without explanation. On March 16, 1950, the date of the letter containing the second offer, Reich was "having a search made in Harrisburg on the name" of the corporation. The "necessary papers" for incorporation had been prepared and $20,000 paid-in capital with which the new company was to be in business had been deposited in a bank by March 10, 1950. It cannot be denied that certain formalities remained to be complied with before United Electronics, Inc. gained capacity to enter into the lease, but it is perfectly obvious that the offer to lease was seriously made and so considered by the defendants.

Defendants contend that plaintiff "offered no evidence whatever as to the financial responsibility of the proposed tenant" and hence conclude that plaintiff failed to prove that its proposed tenant was "able" to perform. There was evidence that United Electronics, Inc. was chartered after March 16, 1950 and that it continued in business down to the time of the trial. There was also evidence that the incorporators had deposited $20,000 paid-in capital and it is not denied that a check in the sum of $800 for the first month's rent accompanied the offer to lease. It was a question for the jury whether this evidence demonstrated the ability of plaintiff's tenant to perform. Further, defendants at no time questioned the financial ability of plaintiff's proposed tenant to perform the lease agreement. They gave no reason whatsoever for rejecting the offer made on behalf of United Electronics, Inc. It was not incumbent upon plaintiff under such circumstances to introduce evidence of the lessee's financial status. *Kline v. Lapida,* 171 Pa. Superior Ct. 516, 91 A. 2d 128.

Finally, the defendants argue that plaintiff "failed to prove that it procured a tenant satisfactory to the defendants". There is evidence that Lewis discussed the listing of the premises under consideration with plaintiff's agent Dick and that such discussion was had "with the knowledge of the co-owner, Nat Hopper". Lewis authorized plaintiff to find a tenant for a term of "something along five years" at a rental of $800 a month, and it was agreed that the lease might contain a "no sales" clause and provide for delivery of possession "anytime". Whether plaintiff's proposed tenant was "satisfactory" to the defendants is to be judged by comparing the terms and conditions which the defendants had agreed upon at the time of the original listing with those offered by plaintiff's tenant. We see no material difference between the terms and conditions defendants gave plaintiff and those offered by plaintiff's tenant, any additional conditions proposed in the tenant's offer being simply those present as a matter of course in most commercial leases. Further, there was evidence that the terms and conditions proposed by the tenant, even if not identical with those defendants were originally willing to accept, were accepted by the defendant Lewis. His authority to bind Hopper by his acceptance was for the jury under all the circumstances hereinbefore related.

Judgment affirmed.