## Green Hills Lumber Co. v. Williams

*J. Robert Maxwell*, for plaintiff.
*Carl Brandt*, for defendants.

MCKENNA, J., July 8, 1963.—This is a mechanic's lien case. The trial resulted in a verdict for defendants. The issue before us on motion for judgment n.o.v. is whether the case should have been submitted to the jury. The trial judge permitted the jury to resolve the question as to whether or not plaintiff, a lumber dealer,

had relied on the credit of the building in selling lumber to the contractor. A motion for new trial has also been filed. This alleges error in the conduct of the hearing.

There is no material dispute in regard to the facts. Plaintiff's case was established at the hearing by Robert Stolte, a salesman for Green Hills, George Edward White, an employe of Suburban Builders, and Joseph A. Hardy, vice president and credit manager of the plaintiff company. For the defense, Kenneth J. Tyson, an agent of Foster Federal Savings and Loan, testified, as did Grant Curtiss Williams, one of the defendants.

The property involved in the case is located in Ross Township, Allegheny County, Pa. It is known as 100 Stone Quarry Road. The individual husband-defendant is a retired employe of the Post Office Department of the United States Government. He and his wife purchased the lot, referred to above in 1946. In March of 1956, the couple entered into a contract with Suburban Builders Company for the erection of a one-story brick dwelling. The contract price was $11,000. The home was financed by the owners, in part, by a construction loan agreement with Foster Federal Savings and Loan Association. It was not completed until sometime after August of 1957.

In the latter part of June of 1957, Suburban Builders entered into an agreement with Green Hills Lumber Company, plaintiff here, whereby Suburban undertook to purchase lumber from Green Hills. This was to be incorporated into the homes which Suburban was then building. Deliveries of materials were made by Green Hills to this job site between June 29 and August 7, 1957. The materials were incorporated into the Williams' home, and the prices charged for the various items were fair and reasonable. Green Hills billed Suburban for the amounts due, but Suburban became insolvent and was unable to meet its obligations. The amount due Green Hills for materials delivered to the

Williams' site is $2,624.50. Interest is claimed from September 7, 1957, which is 30 days after the date of the last delivery to the job.

At the meeting in the latter part of June of 1957, there were present representatives of Green Hills and agents of Suburban. The former were assured that the several homes to which materials were to be delivered were "lienable", that is, they were informed that if Suburban did not pay the bills for materials delivered, mechanics' liens could be filed and perfected against the properties.

Joseph A. Hardy was vice president and credit manager of Green Hills at the time of the events here being considered. He kept track of the invoices or bills sent to Suburban. If they were not paid within 90 days, he undertook to collect from the property which received the benefits of the shipments by filing liens. Green Hills' books were kept in such manner that it was known to which job site each shipment of materials was made. Green Hills did, of course, sell the materials to Suburban. In keeping its records, however, Green Hills did not merely show a claim against Suburban for lumber sold; it noted also on each invoice the name of the customer for whom Suburban was using the lumber. Then if Suburban failed to pay for a certain shipment within the 90-day period, Green Hills filed a lien against the property in the name of the owner for the amount of the bill.

It was stated above that the last delivery was made to the Williams' site on August 7, 1957. On October 23rd of the same year, Green Hills served on the Williamses a notice of intent to file a mechanic's lien. The lien was filed in the office of the Prothonotary of Allegheny County on January 17, 1958, April term 1958, M. L. no. 49. On December 28, 1959, sci. fa. sur mechanic's lien was issued and an alias writ issued on January 13, 1960. An affidavit of defense was filed on

January 18, 1960. This is largely a general denial, that is, defendants assert that they have no knowledge of the facts on which the lien is based. They call for proof of said facts by plaintiffs. They do assert, however, in paragraph four of the affidavit, that the notice of intent and the lien itself were not filed in the office of the prothonotary within the statutory period. The case was tried beginning on January 29, 1963. This resulted in a verdict in favor of defendants on January 30th of that year. Counsel for plaintiff made timely motions for a directed verdict, for judgment n.o.v. and for a new trial.

We are convinced from a review of this record and from a consideration of the applicable legal principles that plaintiff's motion for judgment n.o.v. must be granted. The Mechanic's Lien Act of June 4, 1901, P. L. 431, as amended, 49 PS §1, et seq., contains the provisions governing the procedure whereby a lien may be acquired. Where a new structure is to be liened by a subcontractor, claimant must take these steps:

1. Serve upon the owner a notice of intent to file a claim at least one month before the claim is filed and within three months after the last materials are furnished: 49 PS §101.

2. File a claim within six months of last delivery: 49 PS §52.

3. Within one month after filing his claim, he must serve upon the owner a notice that the same has been filed, specifying court, term and number. He must, within the same one-month period, file an affidavit of service of said notice: 49 PS §131.

4. Issue a sci. fa. within two years of filing the claim: 49 PS §52.

5. Secure judgment within five years of issuance of the sci fa.: 49 PS §52.

The record before us indicates that plaintiff has complied with the foregoing requirements. The last delivery was made August 7, 1957. The owner was served with notice of intent on October 23, 1957, and the claim was filed on January 17, 1958. Thus, step 1 above, requiring service of notice of intent at least one month before the claim is filed and within three months after last delivery, is satisfied. The claim was filed, to repeat, on January 17, 1958, within six months of last delivery, step 2. Notice that the claim was filed was served on the owner on February 4, 1958, within one month after filing, step 3. Scire facias was issued December 28, 1959, within two years of January 17, 1958, the date of the filing of the claim, step 4; and, finally, verdict was secured on January 30, 1963, within five years of issuance of the sci. fa. Since these technical steps were so carefully followed by plaintiff, it is entitled to the benefit of its lien. There is no evidence to support the jury's finding that claimant did not look to the credit of the building. The question should not have been submitted to it. Plaintiff's motion for a directed verdict should have been granted.

Plaintiff's position now is, first, that there was no denial by the Williamses in their affidavit of defense that the materials were delivered on the credit of the building; and, second, that the testimony will not support the verdict. At the trial, the court refused to concede to plaintiff's first point and allowed an amendment to the pleadings to permit an issue to be raised. We will not discuss the validity of that ruling, as we do adopt plaintiff's second position that there was no evidence to support the verdict. The first question is now moot.

Defendants argue that the record will support the verdict in their favor. We cannot agree. Much of the testimony relied upon by them is irrelevant to the issue. For example, it is true that Green Hills knew that

the Williamses had secured a construction loan agreement. It was anticipated that Suburban would be paid from this as the work progressed and would, in turn, pay its suppliers. This is consistent with a finding that Green Hills looked to the security of the property. Also, the terms of payment as between Green Hills and Suburban are totally irrelevant to the issue raised by defendants, which is whether or not plaintiff sold and delivered on the credit of the building.

Counsel for plaintiff asserts that plaintiff is entitled to the benefit of a presumption that the materials were furnished on the credit of the building. With this contention we are in accord. See Hommel v. Lewis, 104 Pa. 465 (1883); Rider-Ericsson Engine Company v. Fredericks, 25 Pa. Superior Ct. 72 (1904); Wood v. United States Steel Corporation, 383 Pa. 158, 160-61 (1955).

In Schwartz v. Whelan, 295 Pa. 425 (1929), it is said, page 431:

"Because it will be for his benefit, it is presumed that every mechanic or materialman desires the security given by the statutes, and he who asserts a waiver thereof must clearly prove it. Where, as here, there is no express covenant not to file one, 'the implied covenant should so clearly appear, that the mechanic or materialman can understand it without consulting a lawyer as to its legal effect': Nice v. Walker, 153 Pa. 123, 132. Or, as it is put in Creswell Iron Works v. O'Brien, 156 Pa. 172, the covenant not to file a lien must be 'so clearly implied that the mechanic or materialman cannot fail to understand it.' These rulings have never been departed from, but, on the contrary, have been repeatedly followed."

This language is controlling in the case at bar, as we have indicated. Defendants have failed to submit any evidence to rebut the presumption that Green Hills

did rely on the credit of the Williams' property when it sold lumber to Suburban Builders.

Plaintiff's counsel asserts that the trial judge erred in permitting the attorney for the defense to cross examine his witnesses on the question as to whether or not plaintiff sold on the credit of the building. His position is this: Where materials are delivered to a home site and incorporated into the dwelling, the presumption is that the vendor sold on the credit of the building; this was established in the case at bar; defendants were required to rebut the presumption by affirmative testimony and not by cross examination of plaintiff's witnesses.

We cannot adopt this reasoning. Agents for plaintiff took the witness stand and testified in support of its claim. It was proper to permit cross examination as to the central issue, that is, the security the vendor considered, even though these witnesses had not touched on this particular subject on direct examination. Certainly, Mr. Hardy, vice president of Green Hills, who was examined on the subject, could have been called by counsel for defense as for cross examination on the point; or he could be cross examined along the same line immediately after completion of his direct testimony. The question is now academic, however, as we have decided the case in plaintiff's favor. We prefer to base our decision on the ground that there was not even a scintilla of evidence that plaintiff did not rely on the building. If we were to reverse on the ground of error in the admission of testimony, we could only grant a new trial. This would serve no purpose. Plaintiff meticulously followed the Mechanic's Lien Act in perfecting its claim. There is no reason to deny it the benefit of it.

Its motion for judgment n.o.v. will be granted, and it follows logically that its motion for a new trial will be refused.

766

### Order of Court

And now, July 8, 1963, plaintiff's motion for a new trial is refused and plaintiff's motion for judgment non obstante veredicto is granted and judgment is hereby entered in favor of plaintiff in the sum of $2,625.50, with interest from September 7, 1957, and against defendants.