## John J. Heidenwag, Appellant, *v.* Philadelphia.

[Marked to be reported.]

*Negligence—Municipalities—Independent contractor—Fireworks.*

Where by the terms of a written contract with a municipality to furnish a display of fireworks, a contractor undertakes to purchase the fireworks, set them off and do the whole work for a designated sum for the entire service, he is an independent contractor, and the municipality is not liable for injuries caused to a person by the contractor's negligence in performing his contract.

A company agreed, in consideration of a lump sum, to furnish a display of fireworks on one of the public bridges of a city, to furnish "expert artisans" to do the firing and to pay all claims for damages for injuries to persons or properties resulting from the fireworks. The specifications showed that the pieces to be displayed were so large that scaffolding was

necessary. The company erected scaffolding upon the sides of the bridge, but the cartway was not obstructed, and cars, wagons and pedestrians were permitted to traverse it. While plaintiff's infant son in charge of his aunt was crossing the bridge, part of the scaffolding fell and killed him. *Held*, that the municipality was not liable for the injury.

*Municipalities—Fireworks—Act of August 26, 1721.*

The act of Aug. 26, 1721, sec. 4, providing a penalty of five shillings for setting off fireworks in the city of Philadelphia without the governor's special license, applies only to individuals, and not to the city acting in its corporate capacity.

Argued Jan. 9, 1895. Appeal, No. 505, Jan. T., 1894, by plaintiff, from judgment of C. P. Phila. Co., June T., 1893, No. 561, entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before FINLETTER, P. J.

At the trial it appeared that on the afternoon of July 4, 1893, plaintiff's son, a boy eight years old, was killed by a large piece of timber falling upon him from a scaffold erected on the sidewalk of Girard Avenue bridge, in the city of Philadelphia, which is one of the principal highways of the city crossing the Schuylkill river. At the time of the accident the boy was walking on the bridge in company with his aunt. The scaffolding had been erected by the Consolidated Fireworks Company under a contract with the city of Philadelphia to furnish a display of fireworks on the evening of July 4, 1893, on the Girard Avenue bridge. The company, under its contract, undertook to do the whole work, including the purchase and setting off of the fireworks for a designated sum to be paid for the entire service. It agreed to furnish " expert artisans " to do the work of firing and also to pay all claims for damages for injuries to persons or properties resulting from the fireworks. The contract further provided that the company should be paid the sum of $8,000 for the display. In pursuance of this contract, scaffolding was erected on the south sidewalk, extending the whole length of the bridge. The other sidewalk was obstructed by guy ropes, and the roadway, in part, by boxes and fireworks. Cars were, however, permitted to traverse the roadway, and large numbers of pedestrians crossed the bridge following the cars. .

The Consolidated Fireworks Company was made a party defendant, but the summons could not be served upon it, and the case proceeded to trial against the city of Philadelphia, alone.

The court entered a compulsory nonsuit which it subsequently refused to take off, FINLETTER, J., filing the following opinion:

"On the afternoon of July 4, 1893, certain persons were completing a scaffolding upon and along the whole of the south sidewalk of Girard Avenue bridge. The east and west ends and entrances of the sidewalk were closed. The north sidewalk was not obstructed, and the north side of the roadway was free for travel. The cars were running on both tracks.

" The plaintiff offered in evidence a contract entered into by the city with the Consolidated Fireworks Company of America for furnishing and setting off fireworks on Girard Avenue bridge on the night of July 4, 1893.

" It may be fairly inferred from the evidence that the scaffolding was erected for the purpose of carrying out this contract. But the evidence does not show by whom or for whom the work was done. There can be, however, no presumption that it was done by or on account of the city.

" It was contended by the plaintiff that, under the act of assembly of Aug. 26, 1721, Smith's Laws, 129, 208, and the ordinance of councils of Sept. 23, 1864, the discharge of fireworks was unlawful, and that the city was therefore liable for any injury that might happen in consequence of the performance of the contract.

" It was further contended that, as the scaffolding was an unlawful obstruction of the highway, it was per se a nuisance, and the city was liable for any injury which resulted therefrom.

" If the city had erected the scaffolding or permitted it to be erected for the discharge of fireworks, it was not an unlawful act. It is the discharge of fireworks which is or may be unlawful, and not the preparations for that purpose.

" When the city or an individual temporarily uses a portion of the highway for a purpose which is not unlawful, the obstruction is not per se a nuisance.

" As this work was supervised by the park guard and police officers, the presumption is that it was lawful.

" But, even if it was unlawful and a nuisance, it imposed no responsibility on the city for its existence, and no duty for its abatement. It is no part of the business or duty of the city to enforce the laws and ordinances, even when they relate to the highways.

" The only duty imposed upon the city in regard to the highways is to keep them ordinarily safe for travel, and in proper repair for that purpose. This duty relates only to construction and repair.

" As the contract required the fireworks company to furnish and set off fireworks on the Girard Avenue bridge, and as the scaffolding was for that purpose, and as there is no evidence that the city had anything to do with that work, it may be inferred that it was done by the company under the contract, and therefore the city is not liable.

" It does not appear from the evidence that there was any negligence in the performance of this work, either in the competency of the workmen or in the materials or implements, or in the manner of their use, nor does it appear that they were not such as are ordinarily used for such purposes.

" Whilst the work was not in itself dangerous, it might be to those who came near it. The public were prevented from entering upon the footway at both ends and entrances. The park guards and police were there to warn and keep the people away. This was notice of the danger of coming near the scaffolding.

" When the boy was struck his aunt had hold of his hand and was going to the footway upon which the scaffolding was erected. She had placed one foot upon the curb. Under the circumstances this was negligence, and as she had the care and custody of the child, the father cannot recover.

" The motion to take off the nonsuit is therefore refused, and the rule is discharged."

*Error assigned* was the refusal to take off nonsuit.

*Edmund Randall, James A. Flaherty* with him, for appellant.—The erection of these derricks, several hundred feet along one sidewalk, the obstruction of the other by guy ropes and the roadway by mortars, boxes, fireworks and sand piles

should have been declared by the court to have been a nuisance, per se, unless they were for some proper municipal purpose, in which case the defendant should have properly guarded the public from danger: Born v. Allegheny etc. Plank Road Co., 101 Pa. 334; Norristown v. Moyer, 67 Pa. 355; Dillon on Munic. Corp. 1030; Smith v. Simmons, 103 Pa. 32.

The acts of Feb. 26, 1721, and of Feb. 9, 1750, 1 Sm. L. 129 and 208, are not obsolete: Homer v. Com., 106 Pa. 221.

The city ordinance of Sept. 23, 1864, also declares the discharge of fireworks in the highway to be a nuisance: Brightly's City Dig. 725, 815.

No usage or custom will justify an encroachment on a public highway, or the presence thereon of an obstruction which renders it unsafe for the uses for which it is dedicated: McNerney v. Reading, 150 Pa. 611; Scranton v. Catterson, 94 Pa. 202.

Whether the obstruction was a nuisance or not, was for the jury, and not for the court to decide: Fritsch v. Allegheny, 91 Pa. 226.

The city can only shift the responsibility to an independent contractor where the work to be done is legal and necessary (laying water pipe): Painter v. Pittsburg, 46 Pa. 213; Susquehanna v. Simmons, 112 Pa. 384.

*Leonard Finletter*, assistant city solicitor, *Charles F. Warwick*, city solicitor, with him, for appellee.—The city of Philadelphia may make a display of fireworks upon the 4th day of July, if she contracts with a responsible firm to do all the work, without making herself liable for any damages that may arise to any one in the erection of whatsoever scaffolding, or other apparatus, the contractor may choose or adopt for use in displaying the fireworks: Act of Feb. 2, 1854, P. L. 21; Craig v. Philadelphia, 89 Pa. 265; Norristown v. Moyer, 67 Pa. 355; Scranton v. Catterson, 94 Pa. 202; Frisch v. Allegheny, 91 Pa. 226.

The custodian of the child having rashly put herself and the child in a position of danger, the appellant must suffer the consequences: Matthews v. Phila. & Reading Co., 161 Pa. 31; Baker v. Westmoreland, 157 Pa. 593; Foreman v. R. R., 159 Pa. 541; Irey v. Penna. R. R., 132 Pa. 563.

OPINION BY MR. JUSTICE GREEN, May 13, 1895:

If the scaffolding erected on the Girard Avenue bridge, from which the timber fell which killed the plaintiff's son, was an unlawful structure, the city was guilty of negligence in authorizing its erection, and cannot shield itself from liability by showing that the death of the boy was due to the negligence of an independent contractor. We are very clear that under the contract which was made between the city and the contracting company which did the work, the contracting company was an independent contractor. By the terms of the contract the company undertook to do the whole of the work, including the purchasing and setting off of the fireworks, for a designated sum to be paid for the entire service. It is true that nothing is said in the contract specifically about the erection of a scaffolding, but the specification annexed to the contract does stipulate that the display is to be made from Girard Avenue bridge, and the mere inspection of the list of piéces to be exhibited proves conclusively that without a scaffolding the exhibition could not take place. The city under the contract could not exercise any control over the work to be done. None of its servants or agents could intervene to take any part in the erection of the proper works, or in the exhibition of the various pieces and designs. On the contrary the company agreed to furnish " expert artisans " to do the work of firing, and they also agreed to pay all claims for damages for injuries to persons or property resulting from the fireworks.

In the case of Painter v. The Mayor etc. of Pittsburg, 46 Pa. 213, the subject of corporate municipal liability for work done, and the payment of damages for injuries inflicted, by independent contractors, was thoroughly reviewed in an exhaustive and able opinion by Mr. Justice STRONG. He showed most clearly that the city, in the circumstances of that case, was not liable. He said amongst other things, " Is the city liable ? We think not. The wrong was not done by any servants of the defendants. There is no room for the application of the principle ' respondeat superior.' The defendants had no control over the men employed by the contractors, or over the contractors themselves. They could not dismiss them or direct their work. The excavation was not illegal, and there was a superior to the workmen, to wit, the contractors. There cannot be more than

one superior legally responsible. . . . It is now settled in that country (England) that defendants, not personally interfering or giving directions respecting the progress of a work, but contracting with a third person to do it, are not responsible for a wrongful act done, or negligence in the performance of the contract, if the act agreed to be done is legal."

In the case of Smith v. Simmons, 103 Pa. 32, this subject again came before us. A ditch was dug in a public street by the license of a borough to lay a water pipe for a citizen. The action was against the owner to recover damages for a personal injury suffered by a woman who fell into the ditch at night because it was insufficiently guarded, and the question was whether the owner was liable or his independent contractor who did the work. We held that the contractor was liable and the owner not. Mr. Justice GORDON, delivering the opinion, said: "Was the digging of the ditch in the public street of the borough of Susquehanna a nuisance per se? If not, if it was such a necessary work as was properly licensable by the borough council, then, as the second question, was the defendant chargeable with the negligence of his contractor who had charge of the work? . . . . If the ditch, dug for and at the instance of, Dr. Smith, was a public nuisance, then he and all engaged in sinking it were responsible for all damages resulting from it, and the doctrine of respondeat superior is out of the case."

It will thus be seen that if the work itself is without legal authority, the principal is liable as well as the independent contractor, and the question arises what is the character in this respect of the work which was being done? It is alleged for the plaintiff that the scaffolding was an unlawful structure, and being erected in a public highway was a nuisance per se. The basis of this contention is an ancient enactment passed in the year 1721, when the state of Pennsylvania was an English province. By the 4th section of the act of August 26, 1721, Brightly's Purdon, 814, pl. 1, it is provided that, "If any person or persons, of what sex, age, degree or quality soever, shall fire any gun or other fire-arms, or shall make or cause to be made, or sell or utter, or offer to expose to sale any squibs, rockets or other fire-works, or shall cast, throw or fire any squibs, rockets or other fire-works within the city of Philadelphia, without the governor's special license for the same, of which

license due notice shall first be given to the mayor of the said city, such person or persons so offending, and being thereof convicted before any one justice of the peace of the said city, either by confession of the said party so offending, or by the view of any of the said justices, or by the oath or affirmation of one or more witnesses, shall for every such offense, forfeit and pay the sum of five shillings." The remainder of the act provides a method of collecting the fine by distress and sale of the offender's goods, and if that is unavailable, then, by the imprisonment of his body. Doubtless there were reasons in those days, when Philadelphia was a small town and the governor resided within its limits, for requiring that his special license should be obtained whenever fire crackers were to be exploded, or fireworks exhibited. But in the present state of our population and our business affairs it seems rather ludicrous than otherwise, that such a requirement should be considered necessary as preliminary to every display of fireworks that may be contemplated by the city or by private persons. It is doubtful whether any license under this antiquated statute has ever been issued in the history of our commonwealth, and it is certain that it is universally disregarded. The subject is certainly a matter of mere police regulation, and is doubtless within the entire control of the municipal authorities, and it seems quite odd that when a municipal corporation sees fit to authorize such a display it should be reminded of its lack of power by a reading of this old law which, if it be in force, would subject the city to a fine of five shillings and a distress of its goods, and a possible imprisonment of somebody, for a violation of its provisions.

It is true that this court has decided that this act is still in force, and that its provisions must be observed. In the case of Homer v. Comlth., 106 Pa. 221, we decided that parties who engaged in manufacturing fireworks in the city of Philadelphia, without a license from the governor to do so, were guilty of a violation of this law and became subject to its penalties. But that decision related to another clause of the act than the one in question, and it concerned only the action of individual persons who were transgressing the provisions of the law. In this case it is the city itself acting in its corporate capacity that is the subject of consideration. There is nothing unlawful intrin-

sically in the preparation and exhibition of fireworks by a city acting as a municipality. Unless therefore the terms of the act of 1721 apply to incorporated cities and include them within the prohibitions designated, the erection of the scaffolding in question was not unlawful. We think it very clear that the act was not intended to apply to cities when acting in their corporate capacity. The prohibition of the act extends to " any person or persons of what sex, age, degree or quality soever." It will hardly be pretended that such a description embraces municipal bodies. It includes individual persons, living human beings, only. In providing the penalties the act directs that " such person or persons so offending " shall be prosecuted and convicted before a justice of the peace and upon conviction shall pay a fine of five shillings. The act further provides for the collection of the fine by a distress and sale of the offender's goods if he have any, and if not, then by the imprisonment of his body. These penalties and their collection are entirely appropriate to the cases of individual persons, but entirely inappropriate in the case of cities or other municipal bodies. We therefore hold that the act of 1721 does not, in this respect, apply to cities, and that exhibitions of fireworks when conducted under their authority are not unlawful, and hence the work of preparing for them is not unlawful. It was claimed that the city was negligent in not having policemen or other agents at the bridge to warn people off and protect them from danger. But unless it was the duty of the city to prevent any travel on the bridge while the scaffold was being erected, we cannot see how negligence can be imputed in this regard. We certainly do not think it was the duty of the city to suspend all travel on the bridge because an ordinary wooden scaffold was being erected on one side of the bridge. If we should say that in this case, consistency would require that we should say the same thing as to the erection of scaffolds along the streets in any other part of the city, which of course could not be done without practically suspending all the building operations which require the use of scaffolds. The evidence shows that many thousands of persons passed to and fro over the bridge while the scaffolding was being erected, and yet no other accident than this is shown to have occurred. It certainly was not the duty of the city to have policemen on hand to conduct each

foot passenger across the bridge. That would have been impossible on account of numbers, and it would have been ineffective to protect against this accident in any event. No policeman could know, any better than any other person, that this particular accident would or might happen, and therefore could not warn anybody against it. The sidewalks were closed at the ends but the roadways were open, and both railway cars and foot passengers were constantly passing and repassing. The stick that caused the death of the child fell in the roadway while it was being handled by the contractors' workmen. While this may be a very good reason for holding the contractors liable we can discover no reason for holding the city liable. The case bears no analogy to the cases in which permanent or dangerous obstructions to travel are permitted by city authorities to remain in positions where the safety of travelers is imperiled.

Judgment affirmed.

STERRETT, C. J., WILLIAMS and DEAN JJ., dissent.