Schwartz et al., Appellants, *v.* Whelan et al., Appellants.

426

Argued January 9, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Earl G. Harrison,* with him *Saul, Ewing, Remick &
Saul,* for appellants in No. 119 and for appellees in No.
126.

*Joseph Blank* for appellees in No. 119 and for appel-
lants in No. 126.

OPINION BY MR. JUSTICE SIMPSON, January 28, 1929:
By an agreement which recited that the defendants,
J. R. and J. A. Whelan, were the "owners in fee" of a
lot of ground, plaintiffs agreed with them to erect there-
on a four-story apartment building for the sum of
$12,575. Part of the work specified was to be "plaster-
ing......in basement where noted." Plaintiffs did the
work, except the plastering in the basement, and re-
ceived $7,750 in cash and notes for $2,500. Neither the
notes, nor the balance of the contract price, was paid,
whereupon plaintiffs filed a mechanic's lien against the
property, alleging that the Whelans were owners and
Thomas Evans was registered owner; served notice of
the filing upon the former but not on the latter; issued
a scire facias on the lien; and, at the trial of the issues
raised thereon, recovered a verdict for $2,025 with in-
terest. From the judgment entered on that verdict both
parties appeal.
Before the trial, defendants moved to strike off the
lien because of a failure to notify Evans, the registered

owner, that it had been filed. By section 21 of the Act of June 4, 1901, P. L. 431, 441, as amended by the Act of April 5, 1917, P. L. 42, it is provided that "within one month after the filing of the claim, the claimant shall serve a notice upon the owner of the fact of filing;...... a failure to serve such notice......within the time specified, shall be sufficient ground for striking off the claim." Evans was not an owner, however, within the meaning of that word in the statute; admittedly he was only a strawman for his codefendants, who were duly served. Section 1 of the Act of 1901 (P. L. 431) says that the word "owner" means "an owner in fee, a tenant for life or years, or one having an estate or interest in the property described in the claim, who......contracts for the" doing of the work for which the lien is filed. By no method of reasoning can Evans be said to be an owner within this definition, especially as he did not contract for the doing of the work. He was simply the holder of the legal title for the Whelans, who alone made the contract as "owners in fee," and who were equitable "owners in fee," even after their conveyance to Evans, to hold the legal title for them.

There are but two other points raised in the statements of questions involved, (which limit the scope of the appeals: Keck v. Vandyke, 292 Pa. 532); one by plaintiffs, alleging that the trial judge erred in not deciding, as a matter of law, that $300 was the limit of allowance which defendants could claim because the plastering in the basement was not done; and the other by defendants, claiming that he erred in not ruling that there could be no recovery, under the mechanic's lien laws, for the $2,500 of notes outstanding. As we will hereafter show, there was no error in either respect; but, if there had been, we would still be compelled to affirm the judgment, for the verdict shows that the jury in fact decided both of these points in the same way that it is now contended the trial judge should have ruled them as matters of law; and hence, what he did was, at

most, nonreversible harmless error: O'Bara v. Bielecka, 279 Pa. 307; Hunter v. Pope, 289 Pa. 560. That the jury did as stated, is demonstrable from the amount of the verdict.

| | |
|---|---:|
| The contract price was | $12,575 |
| upon which cash payments had been made of | 7,750 |
| leaving in controversy | $4,825 |
| The verdict was for | 2,025 |
| and hence the balance to be explained is | $2,800 |
| This balance can be accounted for only by adding the amount of the outstanding notes, for which defendants say no lien was permissible | $2,500 |
| to the credit which plaintiff allows on the plastering | 300 |
| | $2,800 |

The only other way by which the verdict could even be approximated, would be to deduct the whole amount which the defendants claimed regarding the plastering, viz. $2,500, which would leave $300 not accounted for. It seems clear, therefore, that the jury did not include the amount of the notes in their verdict, nor did they charge plaintiffs with more than $300 for the omission of the plastering in the basement. If we had reached the other conclusion, however, we would, as stated above, still decide that the trial judge committed no error in the two rulings of which complaint is made.

At the trial, the question regarding the plastering in the basement, was whether plaintiffs were required to plaster the janitor's apartment therein only, for which they allowed $300, or to plaster practically the entire basement, which would have cost them $2,500. Each party produced evidence to sustain his contention on

this point. The complaint now made is that defendants' evidence in this regard was improperly admitted, because neither fraud, accident nor mistake was pleaded, and hence parol evidence was not admissible, especially as it would result in plaintiffs being responsible for the plastering of a five-story building, instead of the four-story one specified in the contract. There was no writing or plan stating or showing what plastering was to be done in the basement, and hence the meaning of the clause could only be determined by oral evidence. In an endeavor to show what was meant, one of plaintiffs testified that it was verbally agreed the language used was to cover the plastering of the janitor's apartment only. Defendants denied this, and produced evidence to show the whole of the basement was to be plastered. The contract being confessedly ambiguous on the point, and there being no writing or plan to make it certain, both parties had the right to produce parol evidence to resolve the ambiguity: Edmonds v. First Nat. Bank of Connellsville, 215 Pa. 547; O'Connell v. Cease, 267 Pa. 288. Plaintiffs' contention that sustaining defendants' claim would result in their getting a five-story building, instead of the four-story one specified in the contract, cannot be ruled in plaintiffs' favor as a matter of law. The contract called for a four-story building with a basement under it, and for plastering to be done in that basement; it would still be that character of a building whether only part or all of the basement was plastered. The conflicting evidence on the point was, therefore, properly submitted to the jury.

Defendants contended that the court below erred in not ruling, as a matter of law, that the lien was not available to recover so much of the contract price as was to be paid by promissory notes, and, if this could not be sustained in its entirety, there should be excluded, in any event, $800 of that amount because the notes therefor had not matured at the time the lien was filed. In the view we take of the case, there is no distinction be-

tween the two classes of notes, so far as regards the question under consideration; and defendants' contention is readily answered by a brief review of the history and language of our mechanic's lien laws. The effect of these laws is that the building, and the curtilage appurtenant thereto, is collateral security for the payment of debts due for work done and materials furnished in its construction, the lien to remain in force so long as the statutory requirements to that end are complied with. True, the land and structure may be sold, if the lien is filed and proceedings are taken, in due course, to collect therefrom the debt due for the purposes stated; but this is so of all collateral security. The method to be pursued to effectuate the sale is different in the different classes of cases, but the result is the same, if the statutory or contractual method is pursued.

Because it will be for his benefit, it is presumed that every mechanic or materialman desires the security given by the statutes, and he who asserts a waiver thereof must clearly prove it. Where, as here, there is no express covenant not to file one, "the implied covenant should so clearly appear, that the mechanic or materialman can understand it without consulting a lawyer as to its legal effect": Nice v. Walker, 153 Pa. 123, 132. Or, as it is put in Creswell Iron Works v. O'Brien, 156 Pa. 172, the covenant not to file a lien must be "so clearly implied that the mechanic or materialman cannot fail to understand it." These rulings have never been departed from, but, on the contrary, have been repeatedly followed.

In the instant case, it is sought to raise an implied covenant from what is said regarding promissory notes in the following clause of the contract: "defendants agree to pay or cause to be paid the said contractor the sum of $12,575 in the manner following, that is to say, $9,575 in cash,.......in weekly payments, for all work done, on Thursday of each week, and the balance or sum of $3,000 in promissory notes, terms of notes to be 90

days from the dates thereof." It will be observed that this is not a covenant that no lien will be filed. It is only a promise of defendants to pay and of plaintiffs to receive stated sums at stated times in a given way, and is not a covenant to waive the statutory right to file a lien to secure the payments when and as they are to be made. It is clear to us that only a lawyer, seeking to relieve his client from paying a lien, could so construe the language in the present contract, as possibly to operate as an implied covenant not to file a lien; but the reasoning of a lawyer on that point is of no moment under the cases cited—there is no waiver unless the mechanic or materialman, without consulting a lawyer, cannot but understand that a waiver was intended. Such a person might well say that a provision for a future payment of cash as much implied a waiver of liening, as a provision for taking notes to be paid in the future.

We are of opinion, moreover, that the Mechanic's Lien Law of 1901 itself answers defendant's contention on this point. It says in section 2, (P. L. 432) that "Every structure......shall be subject to a lien for the payment of all debts due to the contractor or subcontractor in the erection and construction" thereof. *"Every* structure" is to be liable for *"all* debts" contracted for the purpose stated, and the promissory notes in this case are debts so contracted. This general language is only limited by section 15 (P. L. 438) which, as amended by the Act of April 24, 1903, P. L. 297, says that "The giving of credit or the receiving of collateral security shall not operate to waive the right to file a claim, but shall delay voluntary proceedings thereon [that is on the claim, not on the right to file it] by the claimant until the time of credit has expired." In the instant case, the requirement as to the taking of notes payable in 90 days, is but the giving of credit for that time (which has long since expired) and, as the statute says, has no other effect.

The only case of ours which defendants allege asserts anything to the contrary is American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529. It is not in point. There the contract specified nothing regarding the right to file a lien, but defendants alleged an agreement was entered into, after the work was done, by which plaintiffs were to accept certain notes "in full payment of the claim" (page 536), and that the notes were given to and received by plaintiff. It was of this situation, wholly different in fact and effect from the present one, that the opinion quotes from a textbook that if a "note is taken in payment of the debt, the lien is waived" (page 537). Even that statement is obiter dictum, since it was there decided, as a matter of law, that there was no agreement to take notes at all; which probably explains why the statutory provisions above quoted were not referred to in the opinion. The other case—from another state—and the textbooks cited by defendants, have no relation to the situation existing under our statutes and decisions. We conclude, therefore, that plaintiffs' right to file a lien was not waived.

In each appeal, the judgment of the court below is affirmed.