398 A.2d 1378

Evelyn GONZALEZ, Administratrix of the Estate of Candido
Gonzalez, Deceased, Appellant, at No. 239,

v.

UNITED STATES STEEL CORPORATION, a
corporation, Appellant at No. 241,

v.

EDWARD GRAY CORPORATION.

Vincent CARDILLO, Appellant at No. 240,

v.

UNITED STATES STEEL CORPORATION, a
corporation, Appellant at No. 242,

v.

EDWARD GRAY CORPORATION.

Supreme Court of Pennsylvania.

Argued May 25, 1978.

Decided March 16, 1979.

278

280

Richard D. Gilardi, Gilardi & Cooper, Pittsburgh, for appellant at Nos. 239 & 240 and appellees at Nos. 241 & 242.

Paul A. Manion, Reed, Smith, Shaw & McClay, Pittsburgh, for appellees at Nos. 239 & 240 and appellant at Nos. 241 & 242.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Cases involving less than two of the exceptions to the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an

act or omission of the contractor or his servants," Restatement (Second) of Torts § 409 (1965), are, in the words of Dean Prosser, "comparatively rare."[1] By Dean Prosser's standard, this is not a rare case.

## I. Background

United States Steel Corporation hired an independent contractor, Edward Gray Corporation, to "tear out" deteriorating bricks inside the Number 4 blast furnace at U.S. Steel's Duquesne plant. One Gray employee, Vincent Cardillo, was injured and another Gray employee, Candido Gonzalez, was killed in an accident on the job site. Cardillo and the administratrix of the estate of Gonzalez filed separate complaints against U.S. Steel in the Court of Common Pleas of Allegheny County. Cardillo alleged U.S. Steel's negligence caused his injury, and the administratrix claimed U.S. Steel's negligence caused Gonzalez's death. U.S. Steel denied each plaintiff's allegations of negligence and joined Gray as an additional defendant in each case. The court of common pleas consolidated the cases and the parties presented their evidence to a jury. The jury returned verdicts in favor of plaintiffs, and against both U.S. Steel and Gray. The court of common pleas denied U.S. Steel's motions for judgment notwithstanding the verdicts and for a new trial. (Gray did not challenge the jury's verdicts.) U.S. Steel appealed to the Superior Court. The Superior Court unanimously upheld the denial of U.S. Steel's motions for judgment n. o. v., and a majority granted U.S. Steel a new trial. Both U.S. Steel and plaintiffs petitioned for allowance of appeal, and this Court granted both petitions.[2]

The Duquesne plant's Number 4 blast furnace has four stoves as components. Each stove is approximately 110 feet high and cylindrical. Inside each stove are two adjacent vertical chambers of different widths. The wider of the

1. Prosser, Torts § 71 (4th ed. 1971).

2. This case was reassigned to the writer on January 19, 1979, for the purpose of preparing an opinion expressing the views of a majority of this Court.

two, known as the "checker chamber," is lined with special, heat-retaining "checker bricks." The other chamber, the "well," is lined with a material called "skimwall." Persons may enter the bottom of the well through one of two hatches.

U.S. Steel hired Gray to tear out, from the Number 4 blast furnace stoves, "approximately ten feet" of deteriorating checker bricks at the top of each checker chamber and twenty feet of deteriorating skimwall at the bottom of each well. Gray specialized in brick removal and was not hired to install new bricks. U.S. Steel and Gray signed a contract supplied by U.S. Steel which contains a printed provision that "[t]he safety of all persons employed by contractor . . shall be the sole responsibility of contractor" and a provision that "[c]ontractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees . . . ." The contract incorporates several sets of "owner's specifications." One set includes a typed clause stating that "[t]he contractor shall provide and maintain all required barricades, planks, handrails, lanterns, warning signs and everything necessary for the safe and proper conduct of the work and for the protection of all equipment, property, Contractor's employees, Purchaser's employees and all other equipment." Another set contains a typed clause stating that "[c]ontractor shall equip work covered by this contract with all proper safety devices for the protection of workmen. . . . "

U.S. Steel shut down the furnace and Gray began work on the stoves. In the Number 3 stove, as in the others, Gray first tore out checker bricks from the top of the chamber and then threw the bricks into the adjacent well. Discarded bricks accumulated at the bottom of the well. Gray workers entered the well through a hatch and carted out the discarded bricks. Gray removed approximately ten feet of bricks from the top of the checker chamber of the Number 3 stove. It then shifted its efforts to the skimwall at the bottom of the well. Before removing any skimwall, Gray installed scaffolding to support skimwall that would not be removed. Gray then removed about twenty feet of skimwall.

Another contractor, Pittsburgh Pipe, had been hired by U.S. Steel to "rod" the checker bricks remaining in each of the four stoves.[3] Checker bricks are "rodded" by inserting steel rods in the holes of checker bricks at the bottom of the chamber and driving the rods by machine up through remaining checker bricks. The steel rods clear the brick holes of accumulated materials. If rods cannot be driven through all the remaining checker bricks, it becomes necessary to tear out additional checker bricks.

After Pittsburgh Pipe rodded the remaining checker bricks in the Number 3 stove, it was determined that Gray would have to remove more checker bricks. In order to remove more checker bricks at this stage of the work, an eighty foot wooden chute was installed in the well to funnel discarded checker bricks away from both remaining skim-wall and its temporary supporting structure. U.S. Steel directed Gray "as to the amount of checker bricks to be torn out of the No. 3 stove after the initial ten feet of checker bricks had been torn out."[4] As Gray removed the additional bricks, torn out bricks accumulated at the bottom of the well, causing the bottom of the eighty foot chute to become embedded in checker bricks.

To permit additional accumulation of discarded checker brick, Gray ordered its employees to dismantle the bottom portion of the chute. Cardillo and Gonzalez entered the well to do so. They partially dismantled the bottom portion of the chute and discovered that the upper portion of the chute was clogged with discarded bricks. The chute collapsed, killing Gonzalez and injuring Cardillo.

Plaintiffs presented evidence in support of two theories of liability under the Restatement (Second) of Torts §§ 410 and 413, two exceptions to the general rule of Section 409. In support of their theory of liability under Section 410, plaintiffs argued that U.S. Steel negligently ordered dangerous

3. Stipulation, Record at 288a.

4. Stipulation, Record at 288a–89a.

tear out work.[5] On their theory under Section 413, plaintiffs argued that U.S. Steel took inadequate special precautions to protect plaintiffs from the peculiar unreasonable risks of harm inherent in non-negligently performed tear out work.[6] Section 410 and Section 413 differ in that Section 410 addresses liability where the employer is negligent in the orders he gives the independent contractor, while Section 413 imposes liability where an employer fails to provide for the taking of special precautions against "peculiar unreasonable risks," created irrespective of negligence. Section 413

> "is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions. 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done or that it must be an abnormally great risk. It has reference only

**5.** Restatement (Second) § 410 provides:

*"Contractor's Conduct in Obedience to Employer's Directions*
The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself."

**6.** Section 413 states:

*"Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor*
One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

 (a) fails to provide in the contract that the contractor shall take such precautions, or

 (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

to a special, recognizable danger arising out of the work itself."

Section 413, Comment b.

The court of common pleas denied U.S. Steel's motion for a directed verdict and charged the jury on Sections 410 and 413.[7] First the court quoted the rule of Section 410.[8] Next the court instructed that "[o]ne who employs an independent contractor to do work which the employer should recognize is likely to create, during its progress, a peculiar unreasonable risk of physical harm to others, unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer fails to exercise reasonable care to provide in some other manner for the taking of such precautions." Unlike the first part of the charge, the charge on Section 413 did not mirror the Restatement. The court withdrew from the jury's consideration whether U.S. Steel "fail[ed] to provide in the contract that the contractor shall take [special precautions against a peculiar unreasonable risk of physical harm]." See Section 413(a), supra note 6. Over U.S. Steel's objection, the court did not instruct on Section 413(a) because it viewed the question as one for the court, rather than the jury. See generally *Robert A. Felte, Inc. v. White,* 451 Pa. 137, 302 A.2d 347 (1973) (interpretation of contract generally a task for court). The court examined the printed provision of the contract between U.S. Steel and Gray and determined that the writing was insufficient to satisfy any duty U.S. Steel owed under Section 413.

7. Plaintiffs also requested the court to charge on Restatement (Second) § 416 ("Work Dangerous in Absence of Special Precautions") and § 427 ("Negligence as to Danger Inherent in the Work"). Sections 416 and 427 are additional exceptions to the general rule of Section 409 but, unlike Sections 410 and 413, are not predicated upon the personal negligence of the employer. Rather, Sections 416 and 427 "are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer himself has been at fault." Restatement (Second) of Torts Ch. 15, Topic 2, Introductory Note. The court refused these charges and plaintiffs excepted, but did not pursue their objections.

8. See supra note 5.

After the jury returned its verdicts and the court of common pleas denied U.S. Steel's motions, U.S. Steel appealed. In granting U.S. Steel a new trial, the Superior Court concluded that the court of common pleas committed reversible error by charging on only a portion of Section 413. According to the Superior Court, the trial court "removed an issue from the case which should have been left to the jury." *Gonzalez v. United States Steel Corp.*, 248 Pa.Super. 95, 108, 374 A.2d 1334, 1341 (1977). These appeals followed.

On its appeal, U.S. Steel again seeks judgment notwithstanding the verdicts. Plaintiffs, on their appeal, argue that their verdicts against U.S. Steel should be reinstated. We disagree with each claim, and are of the view that the Superior Court correctly granted U.S. Steel a new trial.

## II. Motion for Judgment N.O.V.

U.S. Steel contests its liability to plaintiffs under Section 410. U.S. Steel argues that, under Section 410, "liability can only be imposed for directing work to be done which is dangerous in itself or dangerous because of the manner in which it is directed to be done." [9] It contends that there can be no liability where, without the employer's direction, the independent contractor adopts an improper method of performance, or the employer is not informed of a risk arising during the progress of the contractor's work. According to U.S. Steel, the record establishes that the tear out work was not dangerous in itself, that U.S. Steel did not direct Gray to use the wooden chute or otherwise perform the work in a dangerous manner, and that U.S. Steel exercised no control over Gray's method of performance.

Plaintiffs introduced expert evidence that tear out work in a checker chamber normally is completed before tear out work is begun in a stove well. These experts contended that this procedure is designed to avoid the possibility that discarded checker bricks will cause the temporarily supported skimwall to collapse. Plaintiffs presented testimony to establish that U.S. Steel was familiar with this normal proce-

[9]. Brief for U.S. Steel at 35.

dure by showing that on several occasions U.S. Steel personnel inspected and observed standard tear out procedure. Plaintiffs' witnesses further testified that U.S. Steel gave the order to remove additional checker bricks from the Number 3 stove. The jury heard evidence that Gray and U.S. Steel together rigged the special wooden chute used to funnel additional discarded checker bricks through the stove well and away from remaining skimwall and its scaffolds. The jury also heard testimony that, on the same job, while Gray performed additional tear out work on another stove, a metal chute had been installed and that chute had clogged with discarded checker bricks..

In assessing U.S. Steel's claim that judgment notwithstanding the verdicts should have been granted, this Court must, of course, give plaintiffs, as winners of jury verdicts, "the benefit of every fact and inference of fact which may be reasonably deduced from the evidence." *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 571, 212 A.2d 440, 442 (1965). A view of the record from this perspective compels the conclusion that U.S. Steel's argument must be rejected. The jury, on either of two views of the evidence, may have reasonably concluded under the proper charge of the court that Section 410 liability arose.

From plaintiffs' evidence, the jury could determine that U.S. Steel was familiar with standard tear out procedure, that at the time U.S. Steel ordered Gray to remove additional checker bricks U.S. Steel knew Gray had removed some skimwall and remaining skimwall was temporarily supported by scaffolding, and that Gray had not been hired to replace removed bricks. The jury could decide that U.S. Steel knew, or should have known, that implementation of its order to remove additional checker bricks would require Gray to depart from standard tear out procedure. Based on the testimony that a special metal chute used to facilitate removal of checker brick had clogged previously, the jury could reasonably conclude that U.S. Steel knew or should have known that the additional work would necessitate use of another special chute, and that this chute, like the other,

could clog with checker bricks. The jury could also reasonably conclude that U.S. Steel at least should have known that Gray employees would have reason to enter the bottom of the well to assure the free flow of discarded checker brick. The jury could decide that U.S. Steel was negligent in requesting removal of additional bricks at a time when such removal would require Gray to depart from standard procedure and U.S. Steel was responsible for the creation of circumstances rendering tear out work dangerous in itself. Cf. *Weldon v. Steiner,* 138 Pa.Super. 66, 10 A.2d 19 (1939) (owner of building liable for injuries resulting from falling ladder of independent contractor hired to erect sign where owner, on a windy day, insisted upon performance).

The court charged the jury that U.S. Steel's actionable "orders or directions may be given at the beginning of the contract," and the rule of Section 410 "is most usually applicable where construction or repair work is entrusted to an independent contractor under plans and specifications provided by the employer which prescribe the result to be attained and the material to be used in the work and the manner in which it is to be used. It is, however, equally applicable where an employer otherwise directs his independent contractor to do work which in itself or as ordered to be done is unreasonably dangerous to others." There was evidence from which the jury could conclude that use of the chute was anticipated at the time of contract formation. U.S. Steel retained control over rodding of checker bricks and supervision of their removal. The contract specified removal of "approximately" ten feet of checkers. On this evidence, the jury could conclude that this tear out work, at its inception, was dangerous in itself.[10]

10. U.S. Steel argues that Section 410 (and Section 413) do not impose liability upon an employer of an independent contractor for injuries incurred by employees of the independent contractor. We agree, however, with plaintiffs that this contention was not preserved for our review. For example, in proposed points for charge, U.S. Steel requested the court to instruct that vicarious liability could not be imposed upon U.S. Steel for injuries to employees of the independent contractor. U.S. Steel cites this point to support its claim that the issue is preserved. Plaintiffs' case, though, went to

"[W]here the cause is submitted to the jury on two issues, on one of which the defendant had the right to binding instructions, and on other of which he had not, and the verdict of jury may involve a finding against the defendant on first issue, or on the second, or on both, the verdict will be set aside and a new trial granted." 6A Standard Pennsylvania Practice Ch. 28 § 74 (1960). We have concluded that plaintiffs' general verdict properly may have been based upon liability under the court's charge on Section 410. It follows that U.S. Steel is not entitled to judgment n. o. v.

### III. Motion for New Trial

The court of common pleas concluded that U.S. Steel did not satisfy its duty under Section 413(a) by providing in its contract that Gray would take special precautions against the peculiar unreasonable risks created by a chute. Accordingly, the court charged the jury that U.S. Steel could be held liable if it failed to exercise reasonable care to provide in some other manner for necessary special precautions. See § 413(b), supra note 6. U.S. Steel contends that its contract with Gray satisfies U.S. Steel's duty under Section 413(a). According to U.S. Steel, Gray agreed to take necessary precautions against all peculiar unreasonable risks.

 Under Section 413, U.S. Steel incurs a duty at contract formation to provide for the taking of necessary precautions against peculiar unreasonable risks associated with work anticipated under the contract. Removal of bricks lining a checker chamber and skimwall lining a well is "not a normal, routine matter of customary activity." § 413 Comment b. Rather, this activity closely resembles the examples of work which Section 413 identifies as posing a "peculiar unreasonable risk," and requiring special precautions. As Comment c to Section 413 explains,

the jury on theories that U.S. Steel was independently negligent under Sections 410 and 413. See supra note 7. U.S. Steel agreed to withdraw this point after the court removed vicarious responsibility from the case. Record at 764a.

"the demolition of a building which involves the removal from a wall of the support of the rafters and adjoining walls may involve a recognizable risk that the wall will fall unless, prior to the removal of the rafters and connecting walls, some substitute is provided for it. . . .

The rule stated in [Section 413] requires one who entrusts such work to an independent contractor to provide for the taking of the necessary precautions to protect others from the danger which in their absence the work necessarily involves."

Use of a chute for discarded bricks to accomplish this work, like removal of checker bricks and skimwall, also creates risks which are not present in normal, routine matters of customary activity. If at contract formation the parties anticipated that the contract work might include use of a chute designed to funnel discarded checker bricks, U.S. Steel would then incur a duty to provide for special precautions against risks created by a chute.

■ To decide whether Gray and U.S. Steel indeed anticipated possible use of a chute at the time of contract formation, we look to the contract. At the outset, it must be observed that whether the contracting parties, at the time of contract formation, anticipated possible use of a chute is ordinarily a question for the trial court. "For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended." *Community College of Beaver County v. Society of the Faculty,* 473 Pa. 576, 592, 375 A.2d 1267, 1275 (1977). The common law rule "contributes to the stability and predictability of contractual relations" and "provides a method of assuring that like cases will be decided alike." Restatement (Second) of Contracts § 238 Comment d (Tent. Draft No. 5, March, 1970).

■ At the same time, however, "[a] question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be

drawn from extrinsic evidence." Id. at § 238(a). The writing of the parties is silent on whether the progress of the work might require use of a chute. Some extrinsic evidence of the scope of typical tear out work, see Restatement (Second) of Contracts, supra at § 228(3)(b), indicated that use of a chute is unusual. On the other hand, the writing also provided that Gray would remove "approximately ten feet" of checker brick. Use of an "approximate" term may suggest that Gray would not necessarily finish checker work before beginning skimwall removal. Additional extrinsic evidence bearing on this particular job established that U.S. Steel retained control over rodding of checker bricks and supervising removal of additional bricks, if necessary. See, id., at § 228(1). This, too, could be viewed to affect the sequence of the jobs to be performed. On this record, whether Gray and U.S. Steel, at the time of contract formation, anticipated possible use of a chute was for the jury. See e. g., *Schwartz v. Whelan*, 295 Pa. 425, 145 A. 525 (1929); *Gintzler v. Melnick*, 116 N.H. 566, 364 A.2d 637 (1976).

█ If the jury were to determine that Gray and U.S. Steel, at contract formation, anticipated possible use of a chute, U.S. Steel's obligation under Section 413(a) would be satisfied. The contract between U.S. Steel and Gray contains several provisions in which Gray assumes responsibility for safety of workmen. The parties' contract provides that "[t]he safety of all persons employed by contractor . . . shall be the sole responsibility of contractor," "contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employes . . .," "contractor shall provide and maintain all required barricades, planks, handrails, lanterns, warning signs and everything necessary for the safe and proper conduct of the work . . .," and "[c]ontractor shall equip the work . . . with all proper safety devices for the protection of workmen. . . ." This language would serve to shift then-anticipated risks. Cf. *Sword v. Gulf Oil Corporation*, 251 F.2d 829, 835 (5th Cir.), cert. denied, 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65 (1958)

(employer not liable under § 413 where "contract made it the duty of the contractor to take safety precautions, and specifically to 'provide and have available at all times for use by Contractor's employees engaged in the performance of the work herein undertaken, all safety appliances needed for the maximum protection of Contractor's [employees] against injuries' ").

■ Though the Gray-U.S. Steel contract shifts to Gray those risks anticipated at the time of contract formation and the record would support a jury conclusion that Gray and U.S. Steel anticipated Gray's use of a chute at that time, the charge of the court improperly foreclosed a permissible jury verdict that U.S. Steel is not liable under Section 413. It must be concluded that the Superior Court properly granted U.S. Steel a new trial.

The order of the Superior Court, sustaining the trial court's denial of U.S. Steel's motion for judgment n. o. v., and reversing the trial court's denial of U.S. Steel's motion for a new trial, is affirmed.

POMEROY, former J., did not participate in the decision of this case.

LARSEN, J., did not participate in the consideration or decision of this case.

NIX, J., filed a dissenting opinion and would direct the trial court to grant U.S. Steel judgment n. o. v.

MANDERINO, J., filed a dissenting opinion and would direct the trial court to reinstate plaintiffs' verdicts.

NIX, Justice, dissenting.

This appeal stems from an accident that occurred on December 16, 1970, at a plant of the United States Steel Corporation, (USS). A suit for personal injury was instituted by appellant, Vincent Cardillo, and an action for wrongful death was brought by the Administratrix of the estate of Candido Gonzalez, deceased. The accident occurred during the performance of a contract entered into between Edward

Gray Corporation, (Gray) and USS for the tearing out of bricks in a blast furnace, and its four component stoves.

The accident occurred when a wooden chute built by Gray's employees, Gonzalez and Cardillo, collapsed upon them. The chute facilitated the removal of checker brick debris thrown down the checker chamber into the well and protected the scaffolding supporting the portions of the skimwall that had not been torn out. As a result of the injuries sustained, Gonzalez died and Cardillo suffered serious injury. The suits against USS for personal injury were consolidated for trial and Gray was joined by USS as an additional defendant.

Gonzalez and Cardillo sought to impose liability on USS based on the exceptions to the general rule that one employing an independent contractor is not liable for torts committed by the contractor contained in sections 410, 413, 416 and 427 of the Restatement Second of Torts.[1] The trial judge submitted the case to the jury solely under sections 410 and 413 of the Restatement.[2] After the verdict was entered in

1. Section 409. General Principle:
 Except as stated in § 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.
 Restatement (Second) of Torts § 409 (1965).
2. Section 410. *Contractor's Conduct in Obedience to Employer's Directions*:
 The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.
 Section 413. *Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor*:
 One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
 (a) fails to provide in the contract that the contractor shall take such precautions, or
 (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.
 *Id.*

favor of the injured employes, the court, on post verdict motions, denied *en banc,* the motion for judgment n. o. v., and for a new trial. The matter was then appealed to the Superior Court. That court found that the trial court's refusal to allow the jury to consider an exculpatory clause of the contract in determining the duty of care owed by USS under section 413 required the grant of a new trial.[3] Gonzalez and Cardillo seek reversal of the Superior Court's award of a new trial. USS has appealed the Superior Court's affirmance of the judgment n. o. v.[4]

**3.** The exculpatory clause provided:

The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor. Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. Contractor shall confine his employees and all other persons who come onto Owner's premises at Contractor's request or for reasons relating to this contract and his equipment to that portion of Owner's premises where the work under this contract is to be performed or to roads leading to and from such work sites, and to any other area which Owner may permit Contractor to use.

Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others·against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether such machinery, equipment or facilities are the property of or are being operated by, the Contractor, his subcontractors, the Owner or other persons.

It is understood that if employees of Owner shall perform any acts for the purpose of discharging the responsibility undertaken by the Contractor in this Article 16, whether requested to perform such acts by the Contractor or not, such employees of the Owner while performing such acts shall be considered the agents and servants of the Contractor subject to the exclusive control of the Contractor.

**4.** Gray did not appeal the decision of the trial court and is therefore, not a party in the present appeal.

USS contends that even if Sections 410 and 413 are to be held applicable to an employe of the independent contractor, it is entitled to judgment notwithstanding the verdict, as a matter of law. It is argued that liability cannot be found under the terms of Section 410 because the accident did not result from any negligent directions of USS. Section 410 provides:

Section 410. *Contractor's Conduct in Obedience to Employer's Directions*

The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

From the comments to Section 410 it is apparent that the drafters intended to impose liability for ordering or directing work to be done which is dangerous in itself or dangerous because of the manner in which it is directed to be done. Where the basis for liability rests upon the manner in which it is performed, it must be established that the improper method creating the unreasonable risk resulted from the directions of the employer. Furthermore, liability is also dependent upon whether under the circumstances the employer knew or should have known of the unreasonable risk of physical harm to others (for whose protection he owes a duty) created by his directions.

This concept is not new to the law of this jurisdiction. The general rule provides that one who employs an independent contractor, who is qualified to perform the task, is not responsible for the negligence of the contractor or his employes provided the employer does not personally interfere or assume direction of the work. *Heindenway v. Philadelphia*, 168 Pa. 72, 31 A. 1063 (1895). *See also Fuller v. Palazzolo*, 329 Pa. 93, 197 A. 225 (1938); *Silveus v. Gross-*

The Superior Court gratuitously suggested that USS might also be liable under Sections 416 and 427 of the Restatement. Since this was not an issue raised by the parties in the appeal to that court, we ignore that and will not consider it here. *Weigand v. Weigand*, 461 Pa. 482, 337 A.2d 256 (1975).

*man,* 307 Pa. 272, 161 A. 362 (1932). However, where the employer controlled the means of conducting and performing the work, our decisions have found a master-servant relationship and has been willing to impose liability. Thus the incident of responsibility is affected by the interference of the employer in the contractor's execution of the contract. *Heindenway v. Philadelphia, supra.* The Superior Court, relying upon these principles, held an employer liable because he instructed an independent contractor to erect a sign on a windy day. *Weldon v. Steiner,* 138 Pa.Super. 66, 10 A.2d 19 (1939). Similarly, in *Lasch v. Cohn,* 130 Pa.Super. 161, 196 A. 581 (1938), that court held an employer responsible for damages caused by the bursting of a water-back installed, pursuant to the employer's instructions, by an independent contractor.

The basic law does not appear to be at issue in this lawsuit, but rather the dispute appears to center around its application to the facts of this case. The dispute focuses upon whether there was interference by the employer in the performance of the terms of the contract by the contractor which created the unreasonable risk of harm. To resolve the dispute it must be determined whether the testimony provided a basis for a finding that there was some order or direction of the employer beyond "[the] general right of inspection and supervision that an owner normally enjoys and exercises to insure his receiving from the contractor the benefit of total performance bargained for." *Fisher v. United States,* 441 F.2d 1288 (3rd Cir. 1971). The alleged negligent order of USS upon which liability under Section 410 was predicated, is USS's supposed direction to change the sequence of the tear-out work.

In assessing a motion for judgment n. o. v., we are required to consider the evidence and all reasonable inferences that can be drawn from that evidence in the light most favorable to the verdict winner. *Sorrentino v. Graziano,* 341 Pa. 113, 17 A.2d 373 (1941). Relying upon this standard of review, the testimony established that the terms of the contract required Gray to remove bricks from the

checker chamber, starting at the top, and continue to do so until inspection revealed that the good checker bricks had been reached. A rodding test performed by another independent contractor, Pittsburgh Pipe, was utilized to determine when the good bricks had been reached and further tear out in the chamber was unnecessary. Without waiting for the results of the rodding test, Gray made a *unilateral* decision to begin work in the combustion chamber. The results of the test made it apparent that additional bricks had to be torn out in the checker chamber to comply with the terms of the contract and to properly perform the job that had been undertaken. The evidence thus established that USS did no more than expect performance of the original terms of the contract and that the change in the sequence of the work resulted from Gray's unilateral decision to begin work in the combustion chamber prior to receiving the results from the rodding test which would have indicated whether the tear-out work in the combustion chamber had been completed.

The record indicates that it was Gray's idea to use the wooden chute, and that USS did not give Gray any directions whatsoever regarding the chute. Although USS did rig the chute into place, USS was contractually obligated to furnish a crane to perform rigging operations at Gray's behest. No negligence is alleged with respect to the installation of that equipment and it cannot be contended that the fulfillment of a contractual obligation at Gray's request evidences USS's control over the mode and manner through which Gray sought to achieve the bargained for results of its work. Pennsylvania decisions have generally refused to impose liability upon the employer of an independent contractor for injuries sustained by the independent contractor's employes when the injury neither resulted from lack of safety in the premises under the control of the employer-landowner nor from concealed defects in these premises. *See, Crane v. ITE Circuit Breaker,* 443 Pa. 442, 278 A.2d 362 (1971); *Funari v. Valentino,* 435 Pa. 363, 257 A.2d 259 (1969). Even then, fault based liability cannot be imposed on the

employer-landowner if the defective conditions were created by the work of the independent contractor or his employes. *Celender v. Allegheny County Sanitary Authority,* 208 Pa. Super. 390, 222 A.2d 461 (1966). Gonzalez and Cardillo have, therefore, failed to establish an essential predicate for the imposition of Section 410 liability on USS, that is, adducing evidence that the employer gave "orders and directions" as to the mode and manner of performance which caused the injuries.

The other prong of section 410 liability is based on a showing that the employer ordered or directed work to be done which is dangerous in itself. Under this theory, an employer who insists on the performance of a contractual duty can be held liable under certain circumstances. But before the risk of liability can pass to the employer from the independent contractor, the employer must be on notice of the increased danger. In the instant case, Gonzalez and Cardillo who bear the burden of proof on the issue of the employer's knowledge of the dangerousness of continued performance, did not show that Gray informed USS that the job had become more hazardous than it was prior to the rodding test. Under both Pennsylvania law and the Restatement Second of Torts, USS would not be liable unless it affirmatively knew that the work had become too dangerous for Gray to complete. *See, e. g., Weldon v. Steiner, supra.* Furthermore, this position is bolstered by Comment C to Section 410, which states:

c. *Meaning of "negligently given" orders or directions.* The words "negligently given" are used to denote the fact that the employer knows or should know that the work which is to be done, pursuant to his orders and directions, involves an unreasonable risk of causing physical harm to others. Therefore, the orders and directions are not negligently given if the employer neither knows nor should know that the work involves such risk even though the contractor discovers during the progress of the work that such risks will be involved in following the orders and directions. In such a case, *the contractor alone is negli-*

*gent in following his employer's orders and directions unless he has informed the employer of the risk which has now become appreciable. The employer is not liable unless, having been informed of the risk which the contractor has discovered, he requires the contractor to carry out his original orders and directions, or issues new orders and directions which a reasonable man would not regard as adequate to eliminate the risk involved in following the original orders.* Restatement (Second) of Torts, comment to § 410 (emphasis added).

There is no testimony in the record either that Gray told USS of any increased dangers or that USS had any other basis for knowing of any such dangers.

The opinion of the court states that the jury would infer "that USS was negligent in requesting removal of additional bricks at a time when such removal would require Gray to depart from standard procedure and USS was responsible for the creation of circumstances rendering tear-out work dangerous in itself." The fallacy in the court's reasoning turns on its assumption that, absent express knowledge of the danger or actual control of the operation of the independent contractor, the employer of an independent contractor has a duty to supervise the ongoing details of the contractor's performance of the contract under section 410 of the Restatement. Such analysis conflicts with the meaning of section 410, which has to do with the circumstances under which the employer, by his conduct, shifts the risk of liability from the independent contractor to itself, with that of subsequent sections of the Restatement which have to do with nondelegable, nonshiftable risks imposed on the employer of an independent contractor. The reading given section 410 by the majority gives Gonzalez and Cardillo the benefit of theories of duty and liability embodied in section 416 and section 427 of the Restatement; theories which were not submitted to the jury at the trial phase of this case and which are, accordingly, not relevant on this appeal. It is no service to our rule that every inference should be taken to

sustain the finding for the verdict winner to distort the analytic structure of the Restatement and Pennsylvania case law in order to salvage the jury verdict. *Fisher v. United States, supra; Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 189 A.2d 273 (1963). *Cf., Sword v. Gulf Oil Co.,* 251 F.2d 829 (5th Cir. 1958). This court was not daunted by the presence of a plaintiff's jury verdict in *Brletich v. United States Steel Corp.,* 445 Pa. 525, 285 A.2d 133 (1971) when it overturned an analytically unsound attempt to stretch section 413 to fit an erroneous application of law to fact.

Again, it should be borne in mind that we are not dealing in the instant case with nondelegable duties of the employer of an independent contractor under sections 416 or 427 of the Restatement. In considering the proper scope of liability, we take into account the caveat that liability should not be lightly extended to penalize the use of the independent contractor so that anyone "having important work of construction or destruction to do would hesitate about entrusting it to anybody." *Silveus v. Grossman, supra.* The Restatement requires an employer to select an independent contractor who is competent to fulfill the requirements of the task. In the instant case, the parties agreed that Gray was a competent independent contractor. When a competent independent contractor has been engaged, the employer's liability is as follows: "Defendants not personally interfering or giving directions respecting the progress of a work, but contracting with a third person to do it, are not responsible for a wrongful act done, or negligence in the performance of the contract, if the act agreed to be done is legal." *Heindenway v. Philadelphia, supra,* 168 Pa. at 78, 31 A. 1063.

Finally, Gonzalez and Cardillo cannot recover under Section 413 as a matter of law due to the exculpatory clause in the contract between USS and the independent contractor. Comment C to Section 416 of the Restatement clearly defines the ambit of Section 413 as follows: "Section 413 states the liability of one who employs an independent

contractor to do such work [work dangerous in absence of special precautions] and *does not provide in the contract that the contractor shall take the precautions necessary to make its progress safe.*" *Accord, Morris v. City of Soldatna,* 553 P.2d 474 (Alaska, 1976); *Brletich v. United States Steel Corp.,* 445 Pa. 525, 285 A.2d 133 (1977); *Porter v. Iowa Power and Light Co.,* 217 N.W.2d 221 (1974). There is no question that the exculpatory provision adequately provided for the precautions necessary to make the work safe as it was envisioned at the time the contract was entered into. Section 413 is inapplicable unless, *at the time the contract was entered into,* the employer should have recognized that the work was likely to create, during its progress, a peculiar unreasonable risk of physical harm to others. See Restatement (Second) of Torts Comment D to Section 427. Under the testimony and the theory of Gonzalez and Cardillo, it is clear that the unreasonable risk was not present at the time the contract was entered into between USS and Gray; but rather arose during the course of the work pursuant to the agreement. Section 413 has no application where, as here, the new risk was created by the negligence of the contractor.

These observations concerning section 413 are consonant with that of the majority, which only fails to act upon its reasoning and analysis by granting USS the judgment n. o. v. on this issue to which it is entitled on the majority's own reading of the law.

Accordingly, I must respectfully dissent from the majority's disposition of the case, which should have been resolved by the grant of a judgment n. o. v. in favor of the United States Steel Corporation on all issues properly presented for appeal in this case.

MANDERINO, Justice, dissenting.

I dissent. The order of the Superior Court should be vacated and the order of the trial court affirmed. See

*Gonzalez v. United States Steel,* 248 Pa.Super. 95, 108, 374 A.2d 1334, 1341 (1977) (Spaeth, J., dissenting).